## FURNACE BRANCH LAND CO. *v.* BOARD OF COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY

[No. 48, September Term, 1963.]

*Decided November 5, 1963.*

*Motion for rehearing filed November 26, 1963, denied December 2, 1963.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Alan J. Malester,* with whom were *Robert L. Sullivan, Jr.,* and *Sklar & Sullivan* on the brief, for appellant.

*Jerome F. Connell, Special Attorney of Glen Burnie, Maryland,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellant sought a mandatory injunction to compel the Board of County Commissioners of Anne Arundel County to rescind, as unconstitutional and void, its resolution denying the application to rezone two tracts of land from Agricultural to Garden-Type Apartment classification and to compel the Board to grant the requested reclassification. Judge Duckett, sitting in the Circuit Court for Anne Arundel County, found that the question the Board had to answer was fairly debatable and that its refusal to rezone was not arbitrary, discriminatory or illegal. We think he was right.

The land in question is in the Fifth Election District of Anne Arundel County and consists of two tracts. The first, some sixty acres, is on the south side of Furnace Branch Road be-

tween the Old Annapolis Road on the west and Route 3 (which passes over the tract on two bridges) on the east. The second parcel, some fourteen acres, is on the north side of Furnace Branch Road between Route 3 on the west and Cedar Avenue on the east.

The applicant for rezoning, the appellant, wishes to construct some one thousand garden-type apartments. It produced recognized experts in land planning, traffic, sewerage and water supply and schools. They presented before the Planning Commission and the Board of County Commissioners of Anne Arundel County, sitting together, at three lengthy hearings (at which there were persistent, loud and, at times, uncontrolled if not unruly, protests of neighbors), a well organized case which, at least on the face of things, showed that since 1952, the time of the adoption of the last zoning map, there had been numerous changes in the zoning classifications within a two and one-half mile radius,[1] that the existing roads would adequately serve the needs of existing traffic and traffic generated by the new apartment dwellers, that there could be provided adequate sewerage facilities and water supply and that there was a need in northern Anne Arundel County for garden-type apartments.

The expert testimony was that the sites were logical and excellent places (and uses of the land) for garden-type apartments and that their construction would rectify a present imbalance in the housing supply of the County because, in the vernacular of the experts, they would have centrality of location, strategic access and proximity to key employment concentrations.

Furnace Branch Road is largely lined on both sides between Old Annapolis Road on the west and the Ritchie Highway on the east with cottage-type homes, some quite substantial. The residents of these houses and other nearby neighbors objected intensely and vocally to garden-type apartments (which they conceived to be row house wolves in apartment sheep's clothing) in their midst, on the grounds that (a) school facilities

---

1. The nearest changes were in 1960 from Agricultural to Light Commercial of a tract immediately to the west of the smaller parcel and a change to Heavy Commercial of a tract just west of the new Light Commercial tract.

are already overcrowded, (b) roads are narrow and curved, (c) the available sewerage facilities have been completely and dangerously inadequate for years and no relief is in sight, and (d) the water supply is frustratingly weak.

The Board found there was a need in the County for "Garden-Type Apartments and other forms of high-density housing," that it had previously rezoned other sites for such apartments and "will, in the future, entertain other applications for this purpose at locations which, in the opinion of the Board, are suitable for said use," but held the desired use of the subject property presently was undesirable in fact.

The Board concedes that there had been shown changes in the neighborhood, and a general need in the County for the use sought (although a protestant testified to a documented finding of a lack of need in the subject location because of vacant houses or already approved high density facilities near plants of large employers). It relies on the claimed present overcrowding of the schools, the narrowness and crookedness of Furnace Branch Road, and the deficiencies in sewerage facilities and water supply.

If it be assumed that the applicants for rezoning demonstrated sufficient change in conditions, over-all need, the adequacy of roads and of existing or soon to be existing schools and water supply (there is no claim that without rezoning no reasonable use can be made of the land), we think there was substantial evidence before the Board which permitted it reasoningly and reasonably to find that the lack of sewerage and water, particularly sewerage, made the concentration of thousands of people on the property in question not in the public interest, if not dangerous to the health of the community.

Change in conditions may justify the amendment of the existing zoning ordinance to reclassify a particular property but it does not necessarily compel it. Even as in original zoning, rezoning must be in the general public interest for the promotion of the health, safety and welfare of the community, as well as in the individual interest of the land owner. Code (1957), Art. 66B, Sec. 21; *Wakefield v. Kraft,* 202 Md. 136; *Huff v. Bd. of Zoning Appeals,* 214 Md. 48.

In support of their effort to show that there would be ade-

quate sewerage facilities, the applicants for rezoning offered a letter from the Anne Arundel County Sanitary Commission, which stated that "sanitary sewers can be made available after construction of the Cabin Branch Pumping Station now planned. The 21-inch interceptor in Furnace Branch Road was designed to receive the flow from this proposed pumping station." The testimony of the expert for the applicants and of the protestants showed that the Cabin Branch Pumping Station had been in the proposed and planning stage for ten years and, apparently, was no nearer reality than it had been when first proposed. The expert's opinion was that the funds which the apartment buildings would generate for the County "might be the thing which will make it [the pumping station] possible." The protestants showed by advices they had received from the Sanitary Commission that the sewer line along Furnace Branch Road "was designed so that relief could be obtained for the septic tank condition at Woodlawn Heights and the East Shipley neighborhoods." These areas are in the vicinity of Furnace Branch Road. A protestant also testified that some two hundred twenty-six property owners in this area had "lived five years or more in their homes waiting for relief from sewage."

We reiterated in *Crowther, Inc. v. Johnson,* 225 Md. 379, as we have held in many cases before and since, that the court, in reviewing the action of zoning authorities, will not substitute its judgment for that of the authority unless the latter's action was arbitrary, capricious or illegal and that if the facts were sufficient to support the decision the question decided was fairly debatable and the decision must be upheld. See also *Snowden v. Mayor and C. C. of Balto.,* 224 Md. 443, and compare *Board v. Oak Hill Farms,* 232 Md. 274.

The facts before the Board as to lack of facilities to dispose of sewage for the contemplated concentration of people made the question of whether to grant or withhold the application for rezoning fairly debatable, at the least. Its decision to withhold approval at this time was not arbitrary, capricious or illegal.

Appellant, despite its efforts to show on the facts that sewerage facilities would be adequate, seeks to support its right

to prevail on this facet of the case by a statement in *Montgomery County v. Merlands Club,* 202 Md. 279, 291-292, that "the sewerage problem certainly could be left to the control of the Health Department of the County and the State, which it is to be presumed would not permit unhealthful or unsanitary conditions to exist."

The zoning board in *Merlands* did no more than suggest that sewerage facilities "might" create a health problem. There was no showing, as here, either that inadequate facilities for the disposal of sewage had been a long continued, dangerous and increasing problem which the government of Anne Arundel County had not been able to solve or catch up with, or that the sought reclassification, if granted, would compound the difficulties and the dangers. The situation before us is more analogous to that in *Montgomery County v. Mossburg,* 228 Md. 555, 559, where, in distinguishing the *Crowther* case, *supra* (which relied on *Merlands* on this aspect of the case), we pointed out that in *Crowther* the Court had held that the Board erred in suggesting the proposed trailer park might constitute a hazard to health because "any health problem 'could be easily alleviated and controlled by the Health Department authorities'" and said:

> "We see distinguishing features between *Crowther* and the case before us. In *Crowther,* the health problem was potential, if not imaginary. Here the existence of a nuisance to the neighborhood was proven to the satisfaction of the Board as a condition and not a fear."

*Order affirmed, with costs.*