DePAUL AND DePAUL, TRUSTEES, ET AL. *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, ET AL.

[No. 103, September Term, 1964.]

*Decided January 5, 1965.*

The cause was argued before HAMMOND, HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

*James Magruder Rea* and *Russell W. Shipley* for appellants.

*Lionell M. Lockhart* and *Harry L. Durity,* with whom were *Robert B. Mathias* and *Joseph S. Casula* on the brief, for appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Prince George's County sustaining the denial of a zoning reclassification by the District Council for the Maryland-Washington Regional District in Prince George's County (the Council). The property involved consists of two adjoining parcels comprising a total area of 2.14 acres; it is located on the north side of Landover Road, about one-half mile west of the John Hanson Expressway, and 700 or 800 feet east of the Baltimore-Washington Parkway. The appellants asked for a change of zoning classification of this property from R-55 (single family dwelling) to R-10 (medium density apartment). The Maryland Park and Planning Commission and its technical staff rec- that there was not sufficient change in the area to justify re- ommended denial of the requested classification change, finding zoning and that its Master Plan for the area was for the prop-

erty's inclusion in the R-55 Zone. The Council, after a hearing, denied the application, and, on appeal, the lower court affirmed the Council's action.

The appellants claim that the Council's action in denying the application was unsupported by competent, material and substantial evidence on the entire record and was therefore arbitrary, capricious and not fairly debatable. They make no other contention under the Prince George's County Statute, Ch. 780 of the Laws of 1959. They also contend that the Council's refusal to grant the rezoning amounted to an unconstitutional taking of the property.

I

The appellants concede that there was no evidence before the Council to show any error in the original zoning map adopted by the County Commissioners in November, 1949. They contend, however, that the record shows there have been numerous changes in the character of the neighborhood sufficient to justify the rezoning they seek.

A portion of the original property owned by the appellants was taken when Landover Road was widened to a six-lane dual highway. One of the houses on the property was destroyed by the widening. While there was sufficient property remaining in this parcel on which to build a house, these owners decided to build elsewhere because of the increased traffic and topographical problems. The other appellants are not occupying their property for the same reasons. The zoning map, the aerial photographs taken for the appellants, and their witnesses show the zoning changes since the map's adoption. These changes have been numerous on both sides of Landover Road, and include reclassifications for apartments as well as commercial zones. None of these changes, however, is closer than approximately a half-mile to the property here involved, except for one lot which the aerial photographs show is undeveloped. The area immediately surrounding the appellant's property is zoned R-55 for single family homes.

There are a number of single family residences on Otis Street immediately adjoining the appellant's property to the north, eight or nine of which are new. There is a substantial rise in ground from the property of the appellants to these houses.

Experts produced by the appellants testified that the property is no longer suitable for development in its present zoning classification and that it would be economically unsound to develop it for single family residences.

In his oral opinion, Judge Bowie said:

> "[N]owhere did there appear to be any technical topographical map submitted to show the comparison in the topography between this land and that on the north side of Otis Street. Other than a bald statement of fact by these men in behalf of the applicants below there didn't appear in the record any additional testimony which would back up this statement regarding impracticability. There were no statistical figures. There was no one presented other than just to make this statement. The fact that houses had been built on the other side of Otis Street within the last few years we think watered this down considerably. There were no figures; just statements. But there were no figures presented on costs. No detailed study had been made, apparently."

He analyzed the zoning changes which had been made and concluded:

> "So if we consider the principle of a small area involved where you have the density of the population, it just doesn't seem to the Court that the decision of the District Council was in any way arbitrary or capricious. The responsibility was upon the applicants in the first instance to prove that there had been a change. It was determined by the District Council that there had not been sufficient change in the area, that it wouldn't be compatible with the neighborhood and, in effect, this was spot zoning. When we consider the principle of a small area because of the density of growth, it just is not, we feel, within the prerogative of this Court to substitute any thought we might have, or our opinion for that of the District Council in this particular case."

We agree.

We have held in many cases that the court, in reviewing the actions of zoning authorities, "will not substitute its judgment for that of the authority unless the latter's action was arbitrary, capricious or illegal and that if the facts were sufficient to support the decision the question decided was fairly debatable and the decision must be upheld." *Furnace Branch Co. v. Board*, 232 Md. 536, 540, 194 A. 2d 640 (1963) and cases therein cited. In *Jobar Corp. v. Rodgers Forge*, 236 Md. 106, 202 A. 2d 612 (1964), we said: "We have stated time after time that it is not the function of the courts to zone or rezone, and the courts will not substitute their judgments for that of the expertise of the zoning officials." 236 Md. at 120.

It is only where the record is devoid of supporting facts that the court may declare the administrative zoning action invalid. In *Board v. Oak Hill Farms*, 232 Md. 274, 192 A. 2d 761 (1963), we affirmed the order of the lower court reversing the Council's action denying petitions for zoning classifications, because we found there was no evidence to support the Council's order. In *Levitt and Sons v. Board*, 233 Md. 186, 195 A. 2d 723 (1963) we reversed the order of the lower court in affirming an order of the Council granting a reclassification, again because we found no evidence to justify the order.

Unlike the situations in *Oak Hill* and *Levitt*, in this case there was substantial evidence to support the Council's action. The zoning map and aerial photographs show that the area immediately adjoining the property involved is still residential. There was testimony that the residential development north of Otis Street had continued during the last year. As the trial court pointed out, general testimony as to the topographical and economic difficulties in using the property involved for residences is not enough, in itself, to require a change or reclassification. There is a strong presumption of the validity of classifications made when the comprehensive map was adopted. *Montgomery County v. Ertter*, 233 Md. 414, 418, 197 A. 2d 135 (1964); *Reese v. Mandel*, 224 Md. 121, 128, 167 A. 2d 111 (1961). In *Oak Hill*, the Planning Commission rejected the staff's recommendations and findings that the proposed rezoning would provide the best possible use of the property and stabilize the area and that the rezoning would adhere to the proposed master

plan. In this case, the Council, the Commission and the staff found the proposed reclassification was inconsistent with the purposes of the Master Plan in effect and was not justified. We find the issue fairly debatable. As in *Kaslow v. Rockville,* 236 Md. 159, 202 A. 2d 638 (1964), the question of whether the Council, on the evidence before it, would have been justified in granting the application, is not before us.

## II

To prevail in their contentions that the Council's action amounted to an unconstitutional confiscation of their property, the appellants must show that the denial of the reclassification precludes the property's use for any purpose to which it is reasonably adapted. *Walker v. Talbot County,* 208 Md. 72, 94-95, 116 A. 2d 393 (1955), *cert. denied* 350 U. S. 902 (1955). If an owner affirmatively demonstrates that the legislative or administrative action deprives him of all beneficial use of his property, the action will be held unconstitutional. *Frankel v. City of Baltimore,* 223 Md. 97, 162 A. 2d 447 (1960); *City of Baltimore v. Cohn,* 204 Md. 523, 105 A. 2d 482 (1954). However, it is not enough for the property owners to show that the exercise of the police power, which is an essential attribute of sovereignty, results in substantial loss or hardship upon some individuals. *Grant v. City of Baltimore,* 212 Md. 301, 314, 129 A. 2d 363 (1957); *Walker v. Talbot Co., supra,* 208 Md. at 87. The restriction on the property imposed by the zoning action must be such that it can not be used for any reasonable purpose. *Marino v. City of Baltimore,* 215 Md. 206, 218, 137 A. 2d 198 (1957); *Serio v. City of Baltimore,* 208 Md. 545, 552-55, 119 A. 2d 387 (1956).

Two real estate experts testified for the appellants (one expert was also one of the appellants) that, in their opinion, the Federal Housing Administration would not approve a home loan on the property. However, there was no evidence that applications for loans to develop the property for residences had been made to and denied by the F.H.A., or that such loans had been applied for and rejected by banks or other lending institutions. There was expert testimony as to the topographical difficulties involved in developing the property for residential

purposes, but, as Judge Bowie pointed out, no figures were presented to show the costs which would be involved. It was shown that the owners of the property would not live on it, because of the noise of the increased traffic which resulted from the widening of Landover Road, and difficulty of access because of grade; however, many homes front on dual-lane highways, and the opinions expressed that grading and building of retaining walls would make the erection of homes financially impracticable were unsupported by figures.

The appellants rely strongly on *Cohn* and *Frankel,* but the facts in these cases were far stronger for the property owners than the evidence here presented. In *Cohn,* it had never been possible to use the tract involved for residential purposes. There were billboards and a fruit stand on the adjacent lot and a tourist camp was on the opposite side. A junk yard for automobiles was only a short distance away. The appellants quote portions of the record in *Frankel* to show similarities with the present case, but there were other facts there involved not here present. In *Frankel* the lot was an irregular tapering one; immediately to the north the entire block was occupied by religious communal buildings; and across the street were a synagogue, a public parking area and a large public junior high school.

*Marino* and *Serio* are closer on the facts. *Marino* was an appeal from a court order affirming the action of the Board of Municipal and Zoning Appeals in refusing to grant an exception under the Zoning Ordinance of Baltimore City; in affirming the order of the lower court, we said: "Although the Marinos based their application for an exception in part under Section 36 (b), *supra,* on the claim that their property was *peculiar* in that its topography as well as the grade between it and the adjacent land to the north rendered it impossible to construct dwellings thereon, the testimony as to such peculiarities was so meager that it was not unreasonable for the Board and the trial court to have concluded that the property was not unique and therefore was not such as to justify an exception for those reasons." 215 Md. at 217-18. In *Serio,* we affirmed the order of the lower court approving the action of the Board of Municipal and Zoning Appeals in refusing to grant a variance for the erection of a filling station in a residential area district, de-

spite expert testimony that the land was not suitable for residential purposes because of the difficulty in obtaining financing and that it could only be used for such purposes at a loss. 208 Md. at 551. *Grant v. City of Baltimore, supra,* involved the constitutionality of the Baltimore billboard ordinance. The appellants contended, *inter alia,* that the ordinance was invalid as to them because their properties could not be used for residences or for any reasonable purpose except to support billboards. We upheld the constitutionality of the ordinance despite the fact that the property of one of the appellants had a gully running through it which would have to be filled for the building of a house. 212 Md. at 321.

We agree with the court below that the appellants have not sustained the burden of showing that the Council's action precludes them from using their property for any purpose for which it is reasonably adapted.

*Order affirmed, with costs to the appellees.*