GOUCHER COLLEGE *v.* DeWOLFE, et al.

[No. 406, September Term, 1967.]

*Decided December 6, 1968.*

639

The cause was argued before HAMMOND, C. J., and MAR-
BURY, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*H. Vernon Eney,* with whom were *M. Peter Moser, Law-
rence F. Rodowsky, J. Frederick Motz* and *W. Lee Thomas*
on the brief, for appellant.

*W. Lee Harrison* for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Goucher College, the appellant, found below that this case
is legally a sow's ear which could not be made into a silk purse,
despite the earnest, untiring and skilled efforts in its behalf to
have rezoned from residential to business twenty-five acres of
its land (the acreage) at the northeast corner of Dulaney Valley
Road and Fairmount Avenue, north of Towson, in order to
permit its sale to Hochschild Kohn and Sears Roebuck for the
construction of two department stores, each embracing an auto-
mobile service center.

The application to rezone was turned down by the Zoning
Commissioner, the Board of Appeals by a two to one vote, and
by the Circuit Court; and in this Court the College becomes a
four-time loser.

The campus of Goucher, a private college for girls consisting
of several hundred acres, lies generally east of Dulaney Valley
Road, south of the Baltimore Beltway, west of most of Campus
Hills, a residential community of approximately four hundred
homes (a few homes are situated along the north side of Fair-
mount Avenue immediately to the east of the southeastern cor-
ner of the acreage), and north of Fairmount Avenue—Goucher
Boulevard. The comprehensive zoning map, adopted on Novem-
ber 14, 1955, with the acquiescence if not the consent of Goucher,
placed the campus in a R-20 use district, except for a strip of

R-10, one lot deep, along the east side of Dulaney Valley Road from Fairmount Avenue to the Beltway. At one time the entrance to the campus from Dulaney Valley Road was planned to be through the acreage but the college buildings actually were built north of an imaginary easterly extension of Southerly Road, which forms a T intersection from the west with Dulaney Valley Road. At this imaginary intersection is the entrance to the buildings of the Peabody Institute (which are on Goucher's land), the southernmost of the buildings on the campus. To the south of the Peabody buildings is the acreage sought to be rezoned.

Immediately to the south of the acreage, in the southeast quadrant of Dulaney Valley Road and Fairmount Avenue, lie thirty-one acres of land zoned B-M on the 1955 map at Goucher's request, which extend southerly to Joppa Road. This land is still owned by Goucher but is occupied and used under leases given by the College. Nineteen acres are Towson Plaza, a community shopping center of forty-five stores and some 1800 parking spaces, and twelve acres are the parking lot of Hutzler's which is in central Towson on the south side of Joppa Road east of Dulaney Valley Road.

Diagonally across from the acreage in the southwest quadrant of Dulaney Valley Road at Fairmount Avenue is the Dulaney Valley Shopping Center on land zoned B-M. The principal store there is a large A. & P.

There are no business zones or uses north of Fairmount Avenue for a considerable distance, both prior and subsequent development having been in accordance with the 1955 zoning map. Directly across from the acreage, on the west side of Dulaney Valley Road, are the Dulaney Valley garden apartments and north of the apartments, up to the Beltway, is a line of individual homes on R-10 lots.

The Board of Appeals held that Goucher had not overcome the presumption of correctness of the comprehensive zoning map of 1955, that there had not been sufficient change in the character of the neighborhood to require the rezoning, that even if there had been sufficient change to justify rezoning, the granting of the rezoning would be detrimental to the health, safety and general welfare of the Campus Hills community, Goucher

College and the apartments and houses along the Dulaney Valley Road, and also a detriment to the commercial development of central Towson as envisioned by the Planning Staff. The Board was not persuaded by the evidence that the acreage was either the only or the best location in the Towson area. It felt that if the unanticipated "population explosion" in the Towson area required it, the County should comprehensively rezone the area and that comprehensive rather than piecemeal rezoning was the logical, appropriate and proper course of action.

Judge Turnbull found that there was "ample evidence in the record upon which the Board could come to the conclusion it did." We agree.

Goucher produced testimony by experts impressive in quality and quantity—both as to original error and subsequent change and on the need for additional department stores in northern Baltimore County, and as to the fact that the acreage was the best, if not the only, available site. There was testimony that it had been wrong in 1955 not to have foreseen the great increase in population in the Towson area which had contributed to a need for added commercial facilities and to a great increase in accessibility of the acreage as a result of the network of new highways in the County. It was said by Goucher's experts that it had been wrong in 1955 to use Fairmount Avenue as a dividing line between the commercial uses to the south and the residential uses to the north, because planners think that generally rear lot lines are the proper dividers—not major traffic arteries (although they admitted that roads sometimes are used). On the other hand, the expert testimony of the Director of Planning for Baltimore County, George Gavrelis, favoring the protestants, who were homeowners in Campus Hills, one of whose home was contiguous to the acreage, was that Fairmount Avenue had intentionally and deliberately been used as a divider as a result of Goucher's persuading the County to zone the thirty-one acres south of the Avenue for business use and to retain the zoning of all the land to the north as residential. He also testified, as did another expert, that major roads can be and are properly used as dividers, and one expert said Fairmount Avenue had been and was a proper division

line in the present case. Mr. Gavrelis also testified that in 1955 it was presumed that Goucher's land north of Fairmount Avenue would be used for educational purposes and that there was no need for a transition zone because the College controlled the uses on both sides of Fairmount Avenue. His testimony and that of two qualified and experienced engineers in favor of the correctness of the original zoning was that the acreage could be reasonably and economically developed in its present classification. Indeed, the engineer widely experienced in residential development testified, giving credible reasons, that it was more adaptable to R-20 development than to commercial or business development.

This Court has held that the drawing of lines between different zones is peculiarly the function of the legislative body that establishes the zones. We have repeatedly and emphatically said and held that a street or a road may be a proper dividing line. This was reiterated in *Brown v. Wimpress*, 250 Md. 200, 205, as follows:

> "The Cabin John Plan comprehensive rezoning 1958 chose to use major highways as dividing lines between the four neighborhood quadrants at the intersection of Democracy Boulevard and U. S. Route 240. We have consistently recognized that this properly and logically can be done. *Hewitt v. Baltimore County*, 220 Md. 48, 60 ('The Baltimore-Harrisburg Expressway now forms a substantial physical barrier between the property lying to the east of it and that lying to the west * * *. It would be difficult, to say the least, to think of a more logical line of demarcation between the industrial and commercial zones to the east and the residential zone to the west of this barrier.'); *Shadynook Imp. Ass'n v. Molloy*, 232 Md. 265, 272; *Kaslow v. Rockville*, 236 Md. 159; *Stocksdale v. Barnard*, 239 Md. 541; *Leroux v. Baltimore*, 248 Md. 106, 110-11 (residential on one side of the street—commercial on the other—'It is consonant with the procedure followed in zoning areas to have a street be the dividing boundary between zones of different classifications')."

The testimony before the Board left it at least debatable whether or not there had been original error in the comprehensive zoning map of 1955 and, this being so, it was for the Board to determine the correct answer. *Agneslane, Inc. v. Lucas,* 247 Md. 612, and cases cited.

Goucher's experts testified that within a radius of a mile and a half of the acreage there had been eighty-one zoning changes from 1955 to 1966 and some forty-five changes within a radius of a mile. The effort of the College was to expand the neighborhood of the acreage to include the whole Towson area because the changes in character upon which it relied were almost all, if not all, too remote to come within the confines of the ordinary concept of a neighborhood. On this aspect of the case, the Board correctly summarized the testimony as follows:

"However, it should be noted that the vast majority of these cases involved special exceptions for office buildings, or similar uses, or reclassifications to a residential apartment zone. [Many of these are uses of houses for professional offices near the Court House] An examination of the exhibit shows that there are only six cases involving commercial, and only one commercial reclassification in close proximity to the subject tract, which was case No. 66-110-R, a reclassification from an R-A zone to a B-M zone east of Fairmount Avenue and north of Joppa Road, within the same general commercial area which comprises Hutzlers and Towson Plaza, and inside the Towson loop. Case No. 63-119-R was a reclassification from an R-6 zone to a B-L zone of a very small lot of ground on the west side of York Road north of Seminary Avenue, and is approximately 7500 feet from the intersection of Dulaney Valley Road and Fairmount Avenue. Case No. 5315-R is again a very small lot of B-L zoning more than one mile from the subject property. Case 3739-R is over 4000 feet from the property, and Case No. 4959-R, which is a reclassification from R-6 to B-L, is more than one mile from the

subject property, while Case No. 5391-R, a reclassification from R-10 and M-L to B-M, is almost two miles from the subject property. The majority of the Board does not find that any of the above mentioned reclassifications have any effect on the subject property. There were no reclassifications north and east of Fairmount Avenue, nor any north of Fairmount Avenue along either side of Dulaney Valley Road."

The matter of the reaches of a neighborhood in a given case and how near a change must be to affect its character are primarily for the Board to determine. In *Woodlawn Ass'n v. Board,* 241 Md. 187, 198-200, we said:

"While what constitutes a neighborhood for the purpose of determining change under the law governing rezoning is not and should not be precisely and rigidly defined, but may vary from case to case, we think that prima facie the properties just referred to which were reclassified from R-55 to R-18 should not be considered to be within the neighborhood * * *."

The *Woodlawn* opinion went on to refer to *DuBay v. Crane,* 240 Md. 180, 185-186, and continued,

" '* * * his property is on the opposite side of the Beltway, which, if not a complete shield against the apartments to be constructed, will serve as an adequate barrier.' Of the other two protestants we said: '* * * both reside a considerable distance (more than four-tenths of a mile) and possibly out of sight of the proposed apartments. And, * * * none * * * were able to show that the value of their respective property would be adversely affected.' "

In the case before us there was no specific evidence why the general rule should not properly have been applied by the Board. While in a particular case the construction of a new road may be evidence of change, the mere increase in accessibility because of more roads and increased road capacity which permitted testimony for Goucher that the two stores to be built

on the acreage would attract and serve customers up to a driving time of twenty-five minutes, would not suffice to increase the neighborhood to be used as a test. *Board of County Comm'rs v. Kines,* 239 Md. 119. If it could, the whole or most of the County could well be a neighborhood.

It was undisputed that the northeast quadrant of Dulaney Valley Road and Fairmount Avenue is residential and institutional (permitted and compatible uses in residential areas as *Shadynook Imp. Ass'n v. Molloy,* 232 Md. 265 illustrates) in zoning and character to the Beltway and well beyond (the Hampton development is north of the Beltway) and that Dulaney Valley Road on the west, north of Fairmount Avenue, is likewise residential. The protestants claim that this quadrant (with the addition of the west side of Dulaney Valley Road) is the neighborhood and point out, accurately, what the Board and the Circuit Court found significant, that if the proposed rezoning were granted the first non-residential use north of Fairmount Avenue since 1955 would come into existence and serve as the camel's head under the tent for future intrusions. The Board, weighing all the testimony, permissibly in our view adopted the protestants' concept of what should constitute the neighborhood.

The testimony on the more peripheral aspects of the case might well have been found more persuasive for Goucher's contentions than for those of the protestants, but we cannot say that the Board acted in an arbitrary, capricious or illegal way in deciding that it was not. The finding by the Board that the granting of the requested rezoning would have been detrimental to the health, safety and welfare of the adjoining and nearby residential zoning uses and to the feasible commercial development on a comparable scale of central Towson, even if some or all of the rezonings relied on by Goucher to show change were assumed to have affected the acreage was permissible under the evidence and the controlling law.

We pointed out in *Furnace Branch Land Co. v. Board of County Commissioners,* 232 Md. 536, 539, that there had been shown changes in the neighborhood, and a general need in the County for the use sought but that:

"Change in conditions may justify the amendment

of the existing zoning ordinance to reclassify a particular property but it does not necessarily compel it. Even as in original zoning, rezoning must be in the general public interest for the promotion of the health, safety and welfare of the community, as well as in the individual interest of the land owner."

There was a similar holding in *Board v. Farr*, 242 Md. 315, 321, which adopted the holding of *County Council for Montgomery County v. Gendleman*, 227 Md. 491, 498, that even if there were facts which would have justified rezoning, this would not of itself prove the denial was arbitrary or illegal. See also *Friedman v. Montgomery County*, 247 Md. 197.

The protestants offered evidence as to the detriment to the nearby residences in Campus Hills and to the apartments and houses on the west side of Dulaney Valley Road, which the Board justifiably chose to believe. There was also testimony for the protestants that there were other suitable department store sites in the Towson area, including sites in central Towson, the location favored by the County Planning Staff, which would support the finding by the Board that it was not persuaded that the acreage was the only, or even the best, location for a department store in the Towson area.

We conclude that, in the words of *Board v. Oak Hill Farms*, 232 Md. 274, 283: "[A] reasoning mind could reasonably have reached [the results the Board reached] upon a fair consideration of the fact picture painted by the entire record." Therefore, its denial of rezoning must be affirmed.

*Order affirmed, with costs.*