FRANKLIN CONSTRUCTION COMPANY
*v.* WELCH, ET AL.

[No. 412, September Term, 1967.]

*Decided December 31, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*W. Hamilton Whiteford* for appellant.

*Richard D. Payne* and *John P. Zebelean, Jr.,* for appellees.

BARNES, J., delivered the opinion of the Court.

This case involves an appeal by the Franklin Construction Company (Franklin), from an order of the Circuit Court for Baltimore County (Proctor, J.), dated January 3, 1968, which affirmed a decision of the County Board of Appeals of Baltimore County (the Board), dated December 12, 1966, denying the petition of Franklin to rezone from an R-10 zone (residential, one family, 10,000 square feet per lot) to a B-L zone (business-local) a 7.3 acre tract of land owned by Franklin in the Catonsville area of the First Election District of Baltimore County (the subject property).

The subject property has a frontage of approximately 340 feet on the east side of Bloomsbury Avenue. It is bounded on the south by Spring Grove Lane, on which it has a frontage of approximately 494 feet, on the southeast by the right-of-way of the Catonsville Short Line Railroad for a distance of 735.8 feet, and on the north by the property of the German General

Orphan Home for a distance of 949.37 feet. The subject property is improved by two old residential buildings.

Immediately to the southeast of the railroad right-of-way lies the property of the Spring Grove Asylum, the power plant of the Asylum being located at the intersection of Spring Grove Lane and the railroad right-of-way. The Asylum operates an elevated spur of the railroad for use in dumping coal for the operation of its power plant.

The subject property slopes from the north to the south with a grade varying between 10% to 15% and in some cases as much as 20%. From west to east it slopes an average of 10%, with a drop of approximately 40 feet over a 500 foot distance.

The subject property was zoned R-10 by the County Council of Baltimore County in the comprehensive zoning adopted on April 5, 1960. North of the subject property, on the same side of Bloomsbury Avenue the land is also zoned R-10 and is used for institutional purposes by the German General Orphan Home. The eastern edge of the subject property abuts the large tract of land occupied by another institutional use, the Spring Grove State Hospital. To the south of the subject property between Spring Grove Lane and Holmes Avenue is a tract of land zoned R-6 (residential, one and two-family, 6000 square feet per lot) and developed with several single family homes. South of Holmes Avenue, between Holmes Avenue and the Catonsville Senior High School, the land is zoned R-10 and is so developed. West of Bloomsbury Avenue the land is also zoned R-10 with the exception of a small triangular tract of land adjacent to the subject property zoned R-A (residence, apartments) and improved by garden apartments.

Bloomsbury Avenue had for some years, and at the present time has, a right-of-way of 30 feet of which 22 feet are paved. There is a proposal to expand its right-of-way to 60 feet with 44 feet of paving, but the uncontradicted testimony of George E. Gavrelis, Director of Planning in the Baltimore County Office of Planning and Zoning, indicated that the "current county capital program, which extends through the year 1971, contains no specific program for improvement to Bloomsbury Avenue, or any road in the very immediate area of the subject property."

Franklin acquired the subject property in 1954. In 1958, it applied for M-R (manufacturing-restricted) zoning but the Board denied this application for rezoning principally on the ground that a traffic hazard would be created. On appeal to the Circuit Court for Baltimore County, the decision of the Board was affirmed on January 26, 1960. No appeal was taken to this Court. The present application for B-L zoning, as amended, is for the erection of six buildings principally used for commercial purposes, offices and parking. Three of the proposed buildings, generally facing Spring Grove Lane, would have either eight or nine levels and would be 100 feet above Bloomsbury Avenue. The required parking would be for 645 vehicles. The development plan would provide for 104 parking spaces in Building No. 5, 104 parking spaces in Building No. 6 and 442 surface parking spaces, a total of 650 spaces, or five more than the required parking spaces. There would be approximately 40,000 square feet in the proposed buildings for commercial use and 60,000 square feet for office space. In the amended application there would be no apartments.

Jack O. Chertkof, a vice-president and minority stockholder of Franklin [1] was the principal witness for Franklin at the hearing before the Board. He is a consulting engineer and graduated from the School of Engineering of the Johns Hopkins University in 1932. He testified in regard to the project, the terrain and surrounding property and also in regard to the traffic problem. He had personally made a traffic count and considered that the traffic situation was critical. He testified further that there had been a severe traffic problem since 1947 and that it would remain critical until Baltimore County relieved it. He also testified that the operation of the project would "increase the traffic to Bloomsbury Avenue." It was his opinion that if Bloomsbury Avenue were widened it would be of ample capacity to take care of the traffic which would be generated by the proposal. On the question of the use of the subject property under R-10 zoning, he testified: "It is not suitable; nothing is impossible, but I can't possibly picture anyone that would buy the property or build homes on an R-10 development plan."

---

1. Mr. Chertkof's father was the principal stockholder and president of Franklin at the time of the hearing before the Board.

David H. Wilson, an architect and site planner, testified on behalf of the applicant. He testified that after he had visited the subject property an analysis was made at his office in regard to the traffic situation and other relevant matters. Mr. Wilson conceded that the subject property could be used for R-10 development but that, in his opinion, it was "less than ideal" and as a site planner he would advise a client not to build in the area under the R-10 zoning. He further conceded that the 10% slope was not excessive and although one would not pick a 10% slope for development "it certainly could be used for R-10 zoning, there are many individual house developments where 10% slopes and greater slopes have been adapted for use." In regard to the traffic situation Mr. Wilson testified that he "couldn't but concur with the statement that the road is inadequate. The traffic was heavy when we were there. The road appeared unsafe, and there was congestion * * * a half mile north of Frederick Road."

Mr. Wilson was prepared to offer an opinion in regard to the proper and best use of the land but the Board refused to receive the evidence on the ground that Mr. Wilson was not qualified to give such an opinion. Counsel for the applicant made a proffer of what would be Mr. Wilson's testimony and the proffer was refused, counsel taking an exception to this ruling.

Dr. W. Worthington Ewell, a well-qualified traffic expert, was called as a witness for the applicant. Dr. Ewell had made a traffic study of the area. He testified that beginning in the year 1963 there had been approximately a 33% increase in the amount of traffic on Bloomsbury Avenue which he characterized as an inordinate increase so far as the road is concerned and further that Bloomsbury Avenue "during the peak hour of the morning is constantly jammed." He further testified that additional institutional construction in the neighborhood would "undoubtedly create more traffic" and that even development of the subject property on the basis of R-10 zoning would create more traffic problems. It was his opinion that if Bloomsbury Avenue were widened to the contemplated 44 feet, it would have a capacity to handle traffic generated by the proposed development.

Mr. Gavrelis testified for the protestants and pointed out that

the planning department of Baltimore County had recommended that the proposed rezoning should not be granted. The comments of the planning staff were as follows:

"1. Property adjacent to the subject parcel generally is zoned R-10 or is unzoned public land. The surrounding area is developed residentially or with institutional uses. From a planning viewpoint, the reclassification requested would result in the creation of a spot zone.

"2. Accessibility to the subject parcel is extremely poor. Bloomsbury Avenue, which is the primary road serving the property, has only a thirty-foot right of way, with a twenty-two-foot-wide pavement. There are no east-west cross connections. Thus, the site is inadequately served for any Business Local uses at all, much less for uses of the scale shown on the petitioner's plat. The latter is a good example of the grossly out-of-proportion land-use potentials which this property would have were the reclassification to be granted. The development shown on the plat would be appropriate in a town center, perhaps near an expressway interchange, or possibly integrated with a large industrial park; by no stretch of the imagination could it be considered appropriate at the subject location.

"3. It is our considered opinion that the First District Comprehensive Zoning Map was correct as adopted, and that there have been no changes in the area of the subject property that would justify any change in the present zoning."

Mr. Gavrelis testified that, in his opinion, he would not say that the subject property was no longer usable as R-10 and stated "R-10 was recommended as a zone that will allow this property to develop in some fair harmony with its neighbors, at a density of somewhere around three to the acre." He further testified that he was "not taking a position that simply improving a road per se is going to necessarily justify other alternate land use zoning classifications."

A number of neighboring property owners testified in oppo-

sition to the granting of the application. Their testimony principally dealt with the dangerous road conditions on Bloomsbury Avenue and with the ever increasing danger to school children and pedestrians.

As already indicated, the Board denied the application. After describing the subject property and reviewing the past zoning history of the property, the Board, in its opinion, stated:

"There have been virtually no changes in the neighborhood since 1960 that would justify the reclassification sought here. The petitioner admits that the traffic on Bloomsbury Avenue is heavily congested, and that it is undoubtedly more congested now than in 1960 when the Court affirmed the Board's denial of the previous zoning request. However, he advances the rather unique argument that by virtue of the County's failure to improve Bloomsbury Avenue, the County is depriving the property owner of any reasonable use of his property.

"The Board cannot agree with this contention as the property can certainly be used in its present classification. Further, if we were to accept this argument, any person, for example, with a large tract of land situated in a remote rural area not served with public utilities, could use the same argument that he was being deprived of the use of his land by reason of the County's failure to extend utilities to his property.

"The Board cannot find, from the evidence, that there has been any change in conditions between 1960 and the present time and, therefore, feels constrained to follow Judge Gontrum's decision in the previous case and finds that the petition here is again premature."

As we have stated, Judge Proctor in the Circuit Court for Baltimore County affirmed the Board's action. Judge Proctor filed an opinion substantially concurring in the findings of the County Board that there was no change in the area and no substantial evidence in the record which would justify the rezoning in this case and that the Board's action was not arbitrary, unreasonable, illegal or capricious. We agree with Judge Proc-

tor's conclusion and will affirm the order affirming the Board's action in this case.

Franklin makes two principal contentions:

1. The present R-10 zoning combined with the failure on the part of Baltimore County for a number of years to provide an adequate access road deprives Franklin of all beneficial use of the property and results in an unconstitutional taking of its property.

2. There are neighborhood changes and an error in original zoning which justify the requested rezoning.

Franklin also argues that the Board erred in rejecting certain evidence proffered to it by Franklin at the zoning hearing.

## 1.

In our opinion the evidence offered by Franklin does not establish that the subject property may not reasonably be developed under the present R-10 zoning.

Mr. Chertkof did not categorically testify that it was impossible to develop the land for single dwellings under the R-10 zoning but stated that in his opinion it "was not suitable." On the other hand, Mr. Wilson testified that the 10% slope was not excessive and that the subject property "could be used for R-10 development." In short, Franklin's own proof does not even establish, *prima facie*, any taking of its property for a public purpose without compensation as prohibited by Article III, Section 40 of the Constitution of Maryland. When the testimony of Mr. Gavrelis was also considered, it seems clear to us that there has been no proof sufficient to establish an unconstitutional taking of Franklin's property; on the contrary, there was substantial evidence that the subject property can be used under the present R-10 zoning. The burden on an applicant to establish an unconstitutional taking under the zoning law is a heavy one and not only must the applicant for rezoning show that a particular use of the property cannot be made under the existing zoning but that the subject property cannot reasonably be used for *any of the uses permitted in the existing zoning. Tauber v. Montgomery County Council,* 244 Md. 332, 223 A. 2d 615 (1966) ; *Mayor and City Council of Baltimore v. Borinsky,* 239 Md. 611, 212 A. 2d 508 (1965). As the

uses as permitted and as limited in the R-40 zone are permitted in the R-10 zone, Franklin would have to establish that the subject property could not be used for these permitted uses in addition to the single family development use. Franklin made no attempt to do this.

Franklin urges the novel contention that if the Board did grant the requested B-L zoning, the great addition of motor traffic on Bloomsbury Avenue would *force the county officials* to proceed with the widening of that road and that for this reason, the requested zoning should be granted. It is clear to us that the determination of county policy in regard to the widening of roads—a policy which involves a consideration of many factors, financial and otherwise—is not committed to the Board but to the executive and legislative branches of the county government and it would have been improper for the Board to have granted the requested zoning on this theory. The Board was confined to the consideration of the traffic problem as it existed at the time of the hearing and it is undisputed that the granting of the requested zoning and the construction of the project would substantially increase the present traffic hazard.

### 2.

Franklin urges that the granting of the R-A zoning for the small triangle adjacent to the subject property and on which the Westridge Apartments (garden-apartments) were subsequently built, with other factors, constitute changes in the neighborhood sufficient to justify the requested rezoning of the subject property to B-L. Franklin also suggests that since the R-10 zoning represented an unconstitutional taking, there was error in original zoning. In regard to the latter contention, we have already indicated that, in our opinion, there was and is no unconstitutional taking so that this suggested ground for error in the original zoning is not established.

Assuming, without deciding, that the changes on which Franklin relies would have been sufficient to have *justified* the Board in granting the requested B-L zoning, it is clear from our prior decisions that the change in conditions in the neighborhood of the property in question does not *require the Board to grant* the requested rezoning. *Agneslane, Inc. v. Lucas*, 247

Md. 612, 620, 233 A. 2d 757, 761 (1967); *Furnace Branch Land Co. v. Board of County Comm'rs,* 232 Md. 536, 539, 194 A. 2d 640, 642 (1963). When the Board *denied* the requested rezoning notwithstanding changes in conditions which might justify such rezoning, the question is whether or not the Board's action was arbitrary, unreasonable and capricious. *Montgomery County Council v. Shiental,* 249 Md. 194, 199, 238 A. 2d 912, 914-15 (1968); *Agneslane, Inc. v. Lucas, supra; County Council for Montgomery County v. Gendleman,* 227 Md. 491, 498, 177 A. 2d 687, 690 (1962).

As we view the evidence, the issues before the Board were at least fairly debatable [2] and when this is the situation, the Courts do not substitute their judgment for that of the Board or hold that the action of the Board was arbitrary, unreasonable and capricious. *Montgomery County Council v. Shiental, supra, Brouillett v. Eudowood Shopping Plaza, Inc.,* 249 Md. 606, 608, 241 A. 2d 404, 405 (1968).

Franklin argued that the Board was in error in refusing the proffer of the opinion evidence of Mr. Wilson which we have already mentioned and also in refusing to permit Franklin to introduce into evidence an official publication made by the authorities of Baltimore County concerning the development plans for the Catonsville area.

Assuming, without deciding, that the Board was in error in refusing to admit this evidence, our review of it indicates to us that, in any event, Franklin was not prejudiced by the rulings as the evidence if admitted would not, in our opinion, have changed the result which the Board reached. An erroneous ruling on the admission of evidence will not justify a reversal unless there has been prejudice resulting from the ruling. *Fennell v. G.A.C. Finance Corp.,* 242 Md. 209, 218 A. 2d 492 (1966); *Space Aero Products Co. v. R. E. Darling Co.,* 238

---

2. We have held that the recommendation of the Technical Staff against the proposed rezoning in a well reasoned report is sufficient, in itself, to constitute probative evidence justifying a denial of rezoning by the Board. Montgomery County Council v. Shiental, 249 Md. 194, 199-200, 238 A. 2d 912, 915 (1968) and cases cited in the opinion in that case.

Md. 93, 208 A. 2d 74 (1965) *cert. den.* 382 U. S. 843, 86 S. Ct. 77, 15 L.Ed.2d 83; *Maged v. Yellow Cab Co.,* 237 Md. 340, 206 A. 2d 257 (1965); *Marlow v. Davis,* 227 Md. 204, 176 A. 2d 215 (1961); *Hughes v. Averza,* 223 Md. 12, 161 A. 2d 671 (1960).

> *Order affirmed, the appellant to pay
> the costs.*