BAUSERMAN, ET AL. *v.* BARNETT, ET AL.

[No. 263, September Term, 1969.]

*Decided March 6, 1970.*

*Motion for rehearing filed April 6, 1970; denied April 7, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*William F. Hickey* for appellants.

*Stanley D. Abrams, Assistant County Attorney,* with whom were *David L. Cahoon, County Attorney,* and *Alfred H. Carter, Deputy County Attorney,* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

This zoning case evolves from an attempt to have a five acre parcel of land located in Colesville, Montgomery County, reclassified from R-R (Rural Residential) to C-1 (Commercial). A similar attempt failed in 1965. The present application arrives here without the blessing of the Planning Commission's technical staff, the Planning Commission itself, the District Council hearing examiner, the District Council or the trial court (Clapp, J.).

The property is rectangular in shape, with a frontage of 265 feet on the west side of New Hampshire Avenue, a depth of 790 feet and a rear property line of 294 feet. It is located about 500 feet north of the intersection of New Hampshire Avenue and Randolph Road. Abutting the front portion of the northern boundary of the subject property is a C. & P. Telephone Company exchange, approved as a special exception on R-R zoned land in 1956. North of this facility is a horticultural nursery on land zoned R-R and the land still further north has predominantly this same classification, with scattered residential development. To the west of the subject property there is vacant land for about 1200 feet, beyond which are single family subdivisions, all in the R-R zone. South of the subject property extending to Randolph Road there are approximately ten acres of undeveloped land zoned C-1. The southwest and northwest quadrants of the New Hampshire Avenue-Randolph Road intersection are zoned R-R except six acres zoned and developed with C-1 uses at the southwest corner; an existing shopping center with C-1 zoning occupies the northeast corner, and partially developed C-1 zoned land is at the southeast corner. The total commercially zoned acreage at the four quadrants of the intersection is twenty-five, with the eastern half of the quadrant having nine acres and the western half, sixteen.

After abandoning in this Court a contention made in the trial court that there was mistake in the original zoning in 1954, appellant now says reclassification to C-1 zoning is required because (1) there exists substantial change in the neighborhood; and (2) refusal to reclassify would deprive the owners of all beneficial use of their property so as to result unconstitutionally in a confiscatory taking of the land.

I

Appellants attempt to support their contention that there has been sufficient change in the neighborhood to compel the rezoning they seek by demonstrating that the Master Plan for the Upper Northwest Branch Water-

shed [1] has been violated in numerous instances and because the area is already commercial as a result of changes in other quadrants of the New Hampshire Avenue-Randolph Road intersection.

In many cases we have stated that a court in reviewing acts of zoning authorities "will not substitute its judgment for that of the authority unless the latter's action was arbitrary, capricious or illegal and that if the facts were sufficient to support the decision the question decided was fairly debatable and the decision must be upheld." *Furnace Branch Co. v. Board,* 232 Md. 536, 540, 194 A. 2d 640 (1963), quoted in *DePaul v. Board,* 237 Md. 221, 205 A. 2d 805 (1965). It is only where the record is lacking in disclosing any supporting facts a court may void the administrative zoning action. *DePaul v. Board, supra.*

In the instant case appellants introduced in evidence seventy-five zoning resolutions of the District Council granting rezoning requests contrary to the Upper Northwest Branch Watershed plan. Since none of the rezoned property lies within two miles of the subject property there was ample justification for the hearing examiner's conclusion, approved by the District Council, that they were too remote in distance to be within the defined neighborhood. *Goucher College v. DeWolfe,* 251 Md. 638, 248 A. 2d 379 (1968); *Woodlawn Ass'n v. Board,* 241 Md. 187, 216 A. 2d 149 (1966); *DuBay v. Crane,* 240 Md. 180, 213 A. 2d 487 (1965); *DePaul v. Board, supra.* "While what constitutes a neighborhood for the purpose of determining change under the law governing rezoning is not and should not be precisely and rigidly defined, but may vary from case to case," *Woodlawn Ass'n v. Board, supra* at 198, the changes relied on must be near enough to the subject property to affect its character.

Appellant further relies on the reclassification to C-1

---

1. The comprehensive or original zoning map was adopted effective January 1, 1954. The Master Plan for the Upper Northwest Branch Watershed was adopted by the Planning Commission in 1961 as a guide and is not a legislative action.

zoning of seven tracts in the immediate area. One happened before the birth of the Upper Northwest Branch Watershed plan, the others were at or near the New Hampshire Avenue-Randolph Road intersection and in conformity with that plan. While these earlier rezonings may have constituted such a change as would permit a reclassification of the subject property, they do not compel it. Unless there was an original mistake in zoning change does not always compel reclassification but there can be no reclassification without change. Lines between zones must be drawn somewhere. Since ". . . the zoning authority, subject to the same limitations as are applicable to other phases of the zoning process, has a right to draw reasonable dividing lines, the council was not required to extend . . . [commercial] zoning in this case beyond the existing . . . [commercial] areas." *Montgomery County v. Shiental,* 249 Md. 194, 199, 238 A. 2d 912 (1968).

Moreover, we have held that where, as here, the Planning Commission's technical staff in a reasoned report recommends against a zoning change, the report in itself constitutes probative evidence making the issue fairly debatable and will justify a denial by the District Council of the requested rezoning. *Franklin Constr. Co. v. Welch,* 251 Md. 715, 248 A. 2d 639 (1968) ; *Montgomery County v. Shiental, supra.*

## II

"To prevail in their contentions that the Council's action amounted to an unconstitutional confiscation of their property, the appellants must show that the denial of the reclassification precludes the property's use for any purpose to which it is reasonably adapted. If an owner affirmatively demonstrates that the legislative or administrative action deprives him of all beneficial use of his property, the action will be held unconstitutional. However, it is not enough for the property owners to show that

the exercise of the police power, which is an essential attribute of sovereignty, results in substantial loss or hardship upon some individuals. The restriction on the property imposed by the zoning action must be such that it can not be used for any reasonable purpose." (Citations omitted.) *DePaul v. Board,* 237 Md. 221, 227, 205 A. 2d 805 (1965).

It is clear that the appellants have not sustained their heavy burden of showing that the Council's action prohibited them from using the property for any purpose for which it is reasonably adapted. On the contrary, there is testimony that the five acres can be developed with single family homes or for other purposes directly permitted or with special exceptions permitted under the R-R zone. *Franklin Constr. Co. v. Welch,* 251 Md. 715, 722, 248 A. 2d 639 (1968). Here the existing zoning is not unconstitutional confiscation since appellants not only failed but in fact made no effort to show that the subject property could not be used for *any* of the permitted uses under its present classification. *Montgomery County v. Laughlin,* 255 Md. 724, 735-36, 259 A. 2d 293 (1969).

*Order affirmed. Appellants to pay the costs.*