STRATAKIS ET AL. *v.* BEAUCHAMP ET AL.

[No. 268, September Term, 1972.]

*Decided May 11, 1973.*

644

The cause was argued before BARNES, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William J. Blondell, Jr.,* for appellants.

*James D. Nolan* and *Newton A. Williams,* with whom were *Nolan, Plumhoff & Williams* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Baltimore County (Proctor, J.) which reversed the granting of a rezoning application and special exception sought by appellants. They are the owners of a 2.63-acre parcel of land located on the northwest corner of Cromwell Bridge Road and Cowpens Avenue in the Ninth Election District of Baltimore County, contiguous to the northbound "on" ramp of the Baltimore Beltway. It is separated from the beltway by a portion of state-owned flood plain. The property is presently in the D.R. 3.5 zone (density residential, 3.5 dwelling units per acre). The application seeks reclassification to the D.R. 16 zone (density residential, 16 dwelling units per acre), and is accompanied by a request for a special exception for office-building use.

We shall demonstrate at the outset perhaps why, among the arguments advanced on appeal, no claim is made of a denial of procedural due process. The application was first studied by the planning board staff which recommended its approval. The planning board, itself, recommended denial, whereupon it was heard by

the zoning commissioner who denied the applications. The zoning commissioner's decision was appealed to the County Board of Appeals, which decided that the county council had erred in assigning the D.R. 3.5 classification as part of a recently-adopted comprehensive zoning map, and granted the application and special exception. On appeal to the circuit court, that decision was reversed. We hope this will be the final chapter in the current zoning history of this parcel.

As we have already suggested, the subject property acquired its present classification (D.R. 3.5) when the county council adopted a comprehensive zoning map for a large segment of Baltimore County on March 24, 1971. This was four months before appellants filed their zoning application. Prior to the comprehensive rezoning, the subject parcel had been in what was then known as the R-20 classification, which was a single-family residential zone allowing two units per acre. In 1970, while it was in that classification, the previous owners of the property had applied for reclassification to the R-A zone (apparently a form of apartment zoning, although the record is unclear in this respect) with a special exception for office-building use. That application reached the stage of being denied by the zoning commissioner on January 12, 1971, prior to the comprehensive rezoning, and was then abandoned in favor of the subject application.

In the processing of that first application, the matter was referred to the planning staff, the director of which was George E. Gavrelis, later to become a major witness for appellants in this case. The staff recommended approval of the zoning application and the petition for special exception. Its reasons were contained in a memorandum from Mr. Gavrelis to the zoning commissioner dated September 4, 1970. There, he said:

> "a. the topography of the tract made it extremely difficult to develop it for *single family residential* purposes.

"b. the shape of the tract similarly made *such development difficult.*

"c. the location of this property between relocated Cowpens Avenue, the Beltway on-ramp, a widened Cromwell Bridge Road, and the new Loch Raven Senior High School suggested that *single family residential development* here would not be tenable." (emphasis added).

By this time, the planning board had become involved in the production of the forthcoming comprehensive rezoning map. In that frame of reference, it had already approved the maps which proposed the D.R. 3.5 density; thus it had rejected any form of commercial zoning for the subject property. We shall see that the same dichotomy between the board and staff prevailed when this zoning case was considered at the planning level.

On July 27, 1971, four months after the property had been comprehensively rezoned, the subject application was filed by appellants, who were then contract purchasers, but are now owners of the property. The planning staff recommended approval stating:

"The Planning staff is recommending that D.R. 16 zoning with a special exception for offices be granted.

"The location of the property next to the Beltway entrance ramp makes it undesirable for residential use. The topography appears to make it difficult to develop in residential use."

The planning board recommended denial with this comment:

"Since the Beltway acts as a physical barrier between the low-density development and the industrial uses on the west, it is felt that D.R. 16 zoning would impinge upon the low-density development."

In rejecting the application, the zoning commissioner said:

"It is obvious . . . that the . . . County

Council in its adoption of the Comprehensive Zoning Map intended to maintain the Beltway as a buffer between the commercial and industrial zoning to the west and the strictly residential area to the east. Further, it is obvious that it was the . . . Council's intention to maintain the large area to the east of the Beltway as a strictly residential area with no commercial or quasi commercial uses, e.g., an office building.

"Without reviewing the evidence further in detail but based on all the evidence presented at the hearing, in the judgment of the Zoning Commissioner, the Comprehensive Zoning Map as adopted by the . . . County Council on March 24, 1971, is presumed to be correct, and the burden of proof is upon the Petitioner to show error in this map concerning the subject property. The Petitioner has failed to do so."

The thrust of the board of appeals decision granting the application was that the planning staff recommendation, which it found persuasive, had not been made available to the county council when it acted on the comprehensive rezoning; and had the staff views then been known to the council, the latter "[might] have acted differently." The circuit court reversed that decision on the ground that the action of the board of appeals constituted illegal "spot zoning." We shall affirm the judgment entered below since we think the result is compelled by a number of our prior decisions. We think, perhaps, that there are more apposite reasons than that cited by Judge Proctor, and we shall outline them here. Before we do so, however, a word is in order concerning the property itself.

The parcel is all that remains from a larger holding, most of which was purchased for, and is now developed as, the new Loch Raven Senior High School. It is north of, or, as we prefer to say, "outside" the beltway; and is situated between relocated Cowpens Avenue, the belt-

way "on" ramp and a widened Cromwell Bridge Road. It is affected by a topographical problem in that it is at grade only at a point close to Cromwell Bridge Road; it then slopes down, in a northerly direction, on a 12% grade to a level of 18 feet below the bed of Cowpens Avenue. To the northwest of the property, separated by another segment of state-owned flood plain, is the Lutheran High School. Across the street, on the northeast corner of Cromwell Bridge Road and Cowpens Avenue, is the Loch Raven Senior High School.

Beyond this immediate area, and north of the beltway, there are residential developments called Brook Meadows, Chatterleigh and Hunt Club Farms. This segment of the county is characterized mainly by single-family development in a density of one and two units per acre. It is likewise apparent from the record that the subject property, which, as we have previously noted, had been in the R-20 zone (two residential units per acre), was singled out for special treatment by the planning board and county council because of the physical characteristics mentioned earlier. Indeed, it appears that the council took a bus trip to visit the subject property. In consequence, the property was assigned a density of 3.5 units per acre, and thus became one of the few parcels in this particular area, outside the beltway, to be so treated.

The reasons for reclassification alleged by appellants in their application are: "that the comprehensive zoning map is in error, in that, the property has no reasonable use under the existing zoning." They have consistently adhered to the same position throughout the entire proceedings, and do so here. In their presentation to the board of appeals, they produced four expert witnesses: Mr. Gavrelis, a traffic specialist, an engineer-planner and a real estate appraiser. The testimony of the traffic expert is not material to this case and we need not dwell upon it here.

Nor is it necessary to summarize Mr. Gavrelis's views, since they are reflected in the two planning staff memoranda from which we quoted earlier. He did explain,

however, the differences in terminology and substance between the new comprehensive rezoning map and its predecessor. He pointed out, for example, that the current equivalent of the R-20 zone previously applicable to the subject property, is D.R. 2 (two residential units to the acre) as compared to the D.R. 3.5 now in effect. More importantly, he explained that under the new comprehensive map, in the D.R. 3.5 zone the single-family restriction is removed and development is measured in terms of density, *i.e.* number of residential units per acre. The principal purpose, of course, is to promote greater flexibility in development; and to allow property owners to adjust or compensate for what might otherwise have been insurmountable hurdles under the "old" zoning map.

Mr. Gavrelis further explained the functioning of the new plan, as applied to the subject property, by demonstrating that appellants could include as part of their available acreage, in addition to the actual 2.63 acres, thirty feet of the width of both Cowpens Avenue and Cromwell Bridge Road. Further, since there is no private dwelling within a distance of 300 feet, they are permitted to build apartments or townhouses—some ten or fifteen in number, depending upon the calculations to be ultimately made—without any constraints upon lot sizes or widths. When asked to compare the prior classification of R-20 with the current D.R. 3.5, Mr. Gavrelis summed it up aptly: "The new zoning, the present zoning regulations offer ever so much more flexibility and possibilities of use than they did. It is like apples and bananas."

It is evident from the testimony of the engineer-planner that his studies of the subject property did not take into account the flexibility outlined by Mr. Gavrelis, since he addressed himself to the property solely in terms of whether it could be developed for single-family homes. Also, he labored under the notion that appellants would be limited to 3.5 units per acre. Apart from resting his testimony on what was essentially an incorrect

premise, he merely made the general statement that: "It would not be *feasible* to develop this as 3.5." (emphasis added). He conceded that he had not made comparable studies of the property based on utilization for townhouses or apartments to determine whether such development would be feasible or profitable. He concluded his testimony by basing his opinion that the county council had erred—in placing the property in D.R. 3.5—upon the reason that: "This is an ideal location to have an office building."

The appraisal expert opined that the property was "not suitable" for development in the 3.5 category for apartment or townhouse use, but when asked to give his reasons for that opinion, lapsed into the "single-family" syndrome, saying: "It is very difficult [because of the topography] to develop in a single-family engineering-wise." [sic]. He added:

> "The location of this property, located in Cow-pens Avenue, the Beltway on-ramping, the widening of Cromwell Bridge Road, and the new Loch Raven Senior High School, certainly suggest to me that *single-family* development here would not be tenable and would not be proper." (emphasis added).

Other statements also reflecting the generalizations employed in his testimony are:

> "When you build apartments, 10 to 15 units, this is a very very difficult project to finance, because the break-even point in apartments are usually about 100. That, then, allows some other additions to the apartments, such as recreational areas, swimming pools, and so on, and if you don't have 100 apartments or more you can't have any residential management, because it doesn't pay for itself.
>
> * * *
>
> "A. Yes, I think they erred. I think they

should have followed the recommendations of the Director of Planning.

\* \* \*

"Q. In making your study to testify in this particular case, did you give any consideration to the economics of an office building, as opposed to the development in 3.5, did you make any studies, or did your research consist of any studies along those lines? A. When I was on the subject site itself, when I climbed down the hill and stood there and looked, in my own mind I recognized this could not be developed for 3.5. Therefore I made no economic analysis."

In this Court, appellants cling to their original contentions that there was error in the comprehensive rezoning of March, 1971, and that the D.R. 3.5 classification is confiscatory as applied to their property; and thus, that the decision of the board of appeals should have been affirmed since the evidence on either of these issues was fairly debatable.

Appellants are correct in citing the test to be applied here. Where a legislative body, or a board of county officials, pursuant to authority conferred upon it, has granted a rezoning of property, the question on judicial review is whether or not such action is arbitrary and discriminatory or fairly debatable, *Montgomery County v. Pleasants,* 266 Md. 462, 295 A. 2d 216 (1972) ; *Himmelheber v. Charnock,* 258 Md. 636, 267 A. 2d 179 (1970) ; *Chevy Chase Village v. Mont. Co.,* 258 Md. 27, 264 A. 2d 861 (1970) ; *Smith v. Co. Comm'rs of Howard Co.,* 252 Md. 280, 249 A. 2d 708 (1969). We shall follow that test in considering this appeal.

While, in recent years, we have had occasion to enunciate a number of important principles applicable to the law of zoning, perhaps none is more rudimentary than the strong presumption of the correctness of original zoning and of comprehensive rezoning. To sustain a piecemeal change in circumstances such as those present

here, *strong* evidence of mistake in the original zoning or comprehensive rezoning or evidence of substantial change in the character of the neighborhood must be produced, *Mayor and Council of Rockville v. Henley,* 268 Md. 469, 302 A. 2d 45 (1973) ; *Heller v. Prince George's Co.,* 264 Md. 410, 412, 286 A. 2d 772 (1972) ; *Creswell v. Baltimore Aviation,* 257 Md. 712, 721, 264 A. 2d 838 (1970). Since, as we have also said, this burden is onerous, *Cabin John Ltd. v. Montgomery Co.,* 259 Md. 661, 271 A. 2d 174 (1970) ; *Creswell v. Baltimore Aviation, supra; Wells v. Pierpont,* 253 Md. 554, 253 A. 2d 749 (1969), the task confronting appellants, whose application followed the comprehensive rezoning by merely four months, is manifestly a difficult one.

The first question posed, then, is whether on the issue of mistake in the comprehensive rezoning of March 1971, the evidence in support of that contention was sufficiently "strong" to make the issue fairly debatable. We think not. There are bald allegations, to be sure, but these are unsubstantiated by facts sufficient to overcome the presumption of correctness which attaches with the adoption of a comprehensive rezoning, *Mayor and Council of Rockville v. Henley* and *Smith v. Co. Comm'rs of Howard Co.,* both *supra.*

Somewhat to the contrary, the evidence shows that the dominant land use in this general area, outside the beltway, is single-family residential, with particular emphasis on one and two units per acre. The subject property had been in the R-20 zone (two units per acre) under the prior ordinance for some fifteen years, and instead of retaining it in its counterpart under the new map (D.R. 2), the county council placed it in the denser category of D.R. 3.5. This category will yield from two to three times as many units as was formerly possible. In addition, there may now be apartment or townhouse use rather than single-family development.

As the evidence reveals, this treatment was hardly accidental. Because of its location and topography, the property was carefully studied by the county council.

That the latter was acutely aware of the "problems" confronting the owners is demonstrated by the action it took in placing the property in a zone which afforded greater density than that previously allowed, and which permitted an adjustment to the topography.

It is true, as appellants point out, that there are numerous commercial uses allowed by the zoning map within walking distance of the property. Without exception, however, these uses are "inside" the beltway. Again, we note that this did not result from mere happenstance, but is part of a carefully-conceived plan which seems to have been faithfully observed. We have consistently recognized that wide major highways may be utilized as dividing boundaries between zones of different classifications, *Goucher College v. DeWolfe*, 251 Md. 638, 248 A. 2d 379 (1968) ; *Brown v. Wimpress*, 250 Md. 200, 205, 242 A. 2d 157 (1968) ; *Montgomery County v. Shiental*, 249 Md. 194, 238 A. 2d 912 (1968) ; *Leroux v. Baltimore*, 248 Md. 106, 234 A. 2d 747 (1967).

Appellants' case for reversal is bottomed principally on the argument that the subject property cannot be developed in the D.R. 3.5 zone. The evidence does not support that contention and, more importantly, it is insufficient to make the issue fairly debatable. In order to obtain a rezoning on the basis of an unconstitutional confiscation, an applicant must show that he has been deprived of *all* reasonable use of his property and that it cannot be used for *any* of the permitted uses in the existing zone, *Mayor and Council of Rockville v. Henley; Cabin John Ltd. v. Montgomery Co.*, both *supra; Montgomery Co. Council v. Kacur*, 253 Md. 220, 252 A. 2d 832 (1969). The testimony presented on this issue consists of the same generalizations of economic infeasibility that are relied upon to support the "mistake" argument. It is well-recognized that such general claims are insufficient to establish that there is no reasonable use for property under a particular zoning classification, *Henley, supra; Pahl v. County Bd. of Appeals*, 237 Md. 294, 206 A. 2d 245 (1965) ; *DePaul v. Board*, 237 Md. 221, 205 A. 2d 805 (1965).

It must not be supposed that, in considering whether the evidence on the issue of "mistake" and "confiscation" is fairly debatable, we have ignored the testimony of the three expert witnesses referred to earlier. But, as we have held, an opinion, even that of an expert, is not evidence strong or substantial enough to show error in the comprehensive rezoning or confiscation unless the reasons given by the expert as the basis for his opinion or other supporting facts relied upon by him are, themselves, substantial and strong enough to do so, *Creswell v. Baltimore Aviation, supra,* at 721; *Westview Park v. Hayes,* 256 Md. 575, 582, 261 A. 2d 164 (1970); *Smith v. Co. Comm'rs of Howard Co., supra,* at 284.

Viewed in this light, the expert testimony here simply does not pass muster. Mr. Gavrelis's testimony did not enlarge significantly upon what had already been expressed in the two staff reports. Moreover, the further testimony he gave, which we reviewed earlier, negated error in the comprehensive rezoning. The engineer-planner's testimony, as we have already stressed, was couched in general references to "feasibility" and "profit." Such characterizations are insufficient to make the issues fairly debatable, *Henley; Pahl v. County Bd. of Appeals; DePaul v. Board,* all *supra.* Furthermore, it is clear that his studies—even in that tenuous frame of reference—were confined to a development of the property for single-family use, and totally ignored the flexibility theme fostered by the comprehensive rezoning. The testimony of the appraisal expert, as we have previously suggested, fares no better. His evidence is devoid of any reason for his opinion of "mistake" other than that he could tell by looking at the property that it could not be developed in D.R. 3.5. He did venture to say the property was "not suitable" for development in D.R. 3.5 because of the topography, but a fair reading of his testimony reveals that he confined his views principally to single-family development.

Lastly, we consider whether the planning staff reports are, in themselves, sufficient to make either issue relied

upon by appellants fairly debatable. We have held in
some cases that a report of the planning staff recom-
mending approval of an application may alone be suffi-
cient to make the issue fairly debatable, *Montgomery v.
Bd. of Co. Comm'rs,* 263 Md. 1, 280 A. 2d 901 (1971);
*Messenger v. Bd. of Co. Comm'rs,* 259 Md. 693, 271 A.
2d 166 (1970); *Stephens v. Montgomery County,* 248
Md. 256, 235 A. 2d 701 (1967).

The reasons contained in the two reports—which we
quoted earlier—introduce nothing that is new or dif-
ferent. In essence, the first report recommended approval
of the rezoning application then being pursued for the
reasons that topography, shape and location made the
property "extremely difficult" to develop for *single-
family* residential purposes. Clearly, any validity this
report may have had when made was erased by the
adoption of the comprehensive rezoning that allows
apartment-house development on this property. The
second report is perhaps more dubious than the first.
Although it recommended that the application be granted
in the context of the new comprehensive rezoning, the
reasons given are merely: "the location of the property
next to the Beltway entrance ramp makes it *undesirable*
for residential use. The topography *appears to make it
difficult* to develop in residential use." (emphasis added).

Thus, appellants' case comes down to those two mean-
ingless generalizations in the second staff report. In ad-
dition to what we said earlier concerning the opinions
of expert witnesses, we think dispositive of the staff-
report issue the following language from *Heller v. Prince
George's Co., supra,* where we quoted from *Habliston v.
City of Salisbury,* 258 Md. 350, 361-62, 265 A. 2d 885
(1970), in which Judge McWilliams wrote for the
Court:

> " 'Appellees attach significance to the Plan-
> ning Commission's adoption of the staff report
> recommending the reclassification from "Indus-
> trial" to "Residential B" and the Commission's

like recommendation to the City Council. They say we have held that "these reports are 'probative evidence' " which, per se, can make the change issue fairly debatable, citing * * * [cases]. In a sense this is true but it must not be supposed that such reports, per se, are either inviolate or invulnerable. They are subject to the same analysis and appraisal that other types of evidence must survive to have probative force. The statements of both Creamer and Burhans, his assistant, make it quite clear that there was little, if any, investigation and study of the situation by the staff and that its conclusions do not rise much, if at all, above the level of wishful thinking; in *Board of County Comm'rs v. Oak Hill Farms*, 232 Md. 274, 284 (1963), we said the "staff report dealt largely in abstractions without meaningful specifics. ". . . We find absurd the notion that this kind of "tinkling cymbal" should make an issue fairly debatable merely because it was written by the Planning Commission's staff and then made a part of the record before the Council.' " 264 Md. at 418-19.

We think that the probative force of the reports, as with the opinions of the expert witnesses, is measured by the soundness of the staff's reasons. In the totality of this record, the reports are no more probative than those referred to in *Heller v. Prince George's Co.* and *Habliston v. City of Salisbury*, both *supra*. Hence, the staff reports here are not sufficient to make the issues of "mistake" or "confiscation" fairly debatable.

Under all these circumstances, the evidence before the board of appeals that there was a mistake in the comprehensive rezoning, or that the reclassification to the D.R. 3.5 zone constituted a confiscatory action, was insufficient to make either of those issues fairly debatable. Judge Proctor was therefore correct in reversing its

decision. Our disposition of this case makes it unnecessary for us to consider whether the special exception was properly granted.

*Order affirmed; appellants to pay costs.*