MAYOR AND COUNCIL OF ROCKVILLE
*v.* STONE ET AL.

[No. 198, September Term, 1973.]

*Decided May 22, 1974.*

*Motion for rehearing filed June 21, 1974; denied June 26, 1974.*

The cause was argued on February 27, 1974, before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and ELDRIDGE, JJ., and reargued on March 26, 1974, before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and ELDRIDGE, JJ., and CHARLES E. ORTH, JR., Chief Judge, and RICHARD P. GILBERT, Associate Judge, of the Court of Special Appeals, specially assigned.

*Roger W. Titus, City Attorney,* for appellant.

*Harry W. Lerch,* with whom were *Lerch, Pillott & Lerch* and *Ronald L. Early* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

If variety is the spice of life, then it would seem that the zoning cases which originate in Montgomery County are certainly well peppered. The factual twists present in this action, which reaches us by certiorari to the Court of Special Appeals,[1] are ample support for this statement since this

---

1. Following the City of Rockville's noting of an appeal from an adverse ruling in the Circuit Court for Montgomery County to the Court of Special Appeals, but prior to its being heard there, both the city and the owners of the property in question joined in a petition for certiorari addressed to this Court which we granted pursuant to Maryland Code (1974), § 12-201 of the Courts Article.

case is unusual in two respects. First, the application which precipitated this litigation was filed by the City of Rockville Planning Commission, a governmental agency, rather than by the joint owners, Mr. and Mrs. Raymond P. Stone and Mr. and Mrs. Ralph Bogart (the protestants), which is the usual course of things in zoning litigation. Second, the controversy involves a request that two contiguous lots be returned to residential zoning, which was their designation in the 1957 comprehensive zoning ordinance adopted by the Mayor and Council of Rockville, rather than maintain the I-1 (industrial) zoning they acquired as a result of our decision in *England v. Rockville*, 230 Md. 43, 185 A. 2d 378 (1962).[2] In *England*, an application was filed by the property owner at that time seeking rezoning of these same lots from R-60 to I-1 or I-2. When the city denied this request, its action was appealed to the circuit court which affirmed. We reversed, and ordered that the request for rezoning be granted after holding that "[t]here was clear evidence of original mistake or change of condition, in addition to the evidence of practical inability to improve the lots for residential use, and that the granting of the application would conform the use to the recommended future use of the whole area, as set out in the proposed comprehensive plan." *England, supra* at 46-47.

From analyzing the case now before us in the light of the voluminous decisions of this Court concerning zoning matters, we glean that, despite the intriguing factual and procedural posture present here, there is really very little new under the sun in this State as far as zoning cases are concerned. Our careful review of the case law in this State and the works of text writers who have concentrated on this discipline has not resulted in the discovery of any rationale which would compel us to adopt a different standard for analyzing the appropriateness of rezoning simply because the application was brought by an arm of the government

---

**2.** The property was zoned "residential A" at the time it was incorporated into the city in 1949, and subsequently was zoned R-60 (residential) in 1957, the time of the adoption of the most recent comprehensive rezoning ordinance. R-75 (residential) is sought now.

rather than the property owner, or because the zoning being questioned was the result of a previous decision of this Court. *R. Anderson, American Law of Zoning*, § 4.33 (1968); *A. Rathkopf, The Law of Zoning and Planning*, 27-23 (1972).[3] The same basic principles which have so often been set out before remain vital and control the decision here as well.

In early February of 1972, the City of Rockville received an application filed by its planning commission which petitioned for the rezoning of the Stone-Bogart lots from I-1 (Industrial) to R-75 (one-family detached residential). Following a hearing on this application, the city, on May 14, 1972, adopted Ordinance No. 12-73 which granted the requested zoning reclassification. Rockville gave as reasons for this decision its determination that the applicant had demonstrated both a substantial change in the character of the neighborhood and a mistake in the original zoning, meeting the requirement of Maryland Code (1957, 1970 Repl. Vol.) Art. 66B, § 4.05 (a); *Pattey v. Bd. of Co. Comm'rs for Worcester Co.*, 271 Md. 352, 317 A. 2d 142 (1974), and that the owners, as protestants, had failed to prove that this rezoning ordinance would result in the unconstitutional confiscation of their property. The owners appealed from this action on the part of the Mayor and Council of Rockville to the Circuit Court for Montgomery County. That court, though finding the question of "change" fairly debatable, reversed the action of the city after ruling that the ordinance amounted "to an unconstitutional deprivation of property without just compensation" in that it resulted in a "very substantial diminution of the actual and uninflated value of the property . . . ." Since we decide that the question of whether there exists "change" or "mistake" is fairly debatable, and do not see that the land owner was unconstitutionally denied all reasonable use of his property by the ordinance, we reverse.

The property in question is described as Lots 5 and 6,

---

**3.** In fact, no one questions the planning commission's authority to file this application, nor should they, particularly in light of the Rockville ordinance which expressly grants it this power. Laws of Rockville (1971), Ch. 6, § 6-2.30 b.

Block 9, H. L. England's Second Addition to Lincoln Park and has the street address of 607 and 609 North Stonestreet Avenue. The lots are situated across the street from, and in close proximity to, that parcel which was the subject of this Court's opinion in *Rockville v. Henley*, 268 Md. 469, 302 A. 2d 45 (1973) and lies directly across Stonestreet Avenue from a large tract which though zoned residential has been

> "used since 1959 by the Montgomery County Board of Education for warehousing, open storage of materials, school buses and trucks, and machine shops [, a permitted use by a governmental agency in a residential zone] . . . . Adjacent to the property . . . is a substandard and dilapidated dwelling described as a 'shack' [which was, in 1972, under orders for demolition]. . . . Nearby [, one block to the west,] is the main line of the Baltimore and Ohio Railroad, paralleling Stonestreet Avenue." *England, supra* at 45.

The immediate area in which these lots are situtated was recently described by this Court in *Henley* as:

> "a residential community which extends for several blocks with small well kept homes. This entire expanse is zoned R-60 with the exception of . . . [two warehouses situated on realty zoned I-2 (Industrial), an apartment house built on land zoned I-2], a group of apartments one block east of the subject site, and two small lots . . . . On the west side of the tracks is land zoned for industrial and commercial use. While the area east of the railroad may not qualify for the appellation of Camelot, it has the appearance of a suburban residential neighborhood interspersed with minimal storage facilities and proximate to some commercial and light industrial development." *Henley, supra* at 472.[4]

----

4. The "two small lots" referred to in *Henley* are the subject of this litigation.

Much ado has been made concerning whether the doctrine of res judicata would prevent this Court from altering the rezoning we ordered in *England.* However, the facts as presented here make that doctrine, in this case, a "stern and simple irrelevancy." [5] In *Alvey v. Hedin,* 243 Md. 334, 221 A. 2d 62 (1966), a leading case in which the application of res judicata to zoning decisions was discussed, this Court held that the doctrine of res judicata was viable in zoning matters and prevented the relitigation of a zoning issue based on facts which existed at the time of the first decision in the case. Here, we are concerned only with the events which have developed during the ten years since the *England* decision, and, in this regard, we find the doctrine of res judicata, as recognized in *Alvey,* inapplicable. Thus, the investigation called for in this case is whether the applicant had adduced sufficient evidence of factors that have developed since our prior decision which would demonstrate that this action, though correct at the time, proved to be a mistake, "or else evidence of a change in conditions [since rezoning was directed in *England*] resulting in a substantial change in the character of the neighborhood." *Heller v. Prince George's Co.,* 264 Md. 410, 412, 286 A. 2d 772 (1972). Of course, in our consideration of these questions, we remain mindful of the fact that the rezoning as directed in *England* had to be based on evidence sufficient to overcome the strong presumption of correctness which is afforded to comprehensive zoning. *Pattey v. Bd. of Co. Comm'rs for Worcester Co.,* 271 Md. 352, 317 A. 2d 142 (1974); *Valenzia v. Zoning Board,* 270 Md. 478, 312 A. 2d 277 (1973); *Trainer v. Lipchin,* 269 Md. 667, 309 A. 2d 471 (1973). Once that rezoning was accomplished, the presumption which accompanied the adoption of the comprehensive plan evaporated and the industrial classification was, before the legislative body, presumptively correct; and the party seeking a change had the burden of producing evidence sufficient to permit another alteration. Nevertheless, when the evidence offered

---

5. Words used by Mark Twain in describing the poems of Julia Moore in *M. Twain, Following the Equator* (1897), Vol. II, Ch. 8.

convinces the legislative body that either change or mistake is present, its decision must be sustained by a court on appeal unless it is shown that this action was arbitrary or capricious because not enough evidence had been adduced to make the issue "fairly debatable." *Pattey v. Bd. of Co. Comm'rs for Worcester Co., supra; Smith v. Co. Comm'rs of Howard Co.*, 252 Md. 280, 249 A. 2d 708 (1969). In our view, these issues are fairly debatable.

In demonstrating change in the neighborhood the applicant must show

"(a) what area reasonably constituted the 'neighborhood' of the subject property, (b) the changes which have occurred in that neighborhood since the comprehensive [or prior piecemeal] rezoning and (c) that these changes resulted in a change in the character of the neighborhood." *Montgomery v. Bd. of Co. Comm'rs for Prince George's Co.*, 256 Md. 597, 261 A. 2d 447 (1970). *See also Rockville v. Henley, supra; Clayman v. Prince George's Co.*, 266 Md. 409, 292 A. 2d 689 (1972); *Heller v. Prince George's Co., supra.*

Exactly what did comprise the neighborhood in this case was the subject of some disagreement. The owners, by their evidence, chose to limit it to a narrow corridor, which runs north and south along the east side of the railroad, and encompasses the lots which lie along Stonestreet Avenue for two blocks, one to the east and one to the west, from Park Avenue to Frederick Avenue. On the other hand, a witness speaking for the planning commission disagreed with this delineation, and defined the neighborhood as that area east of the railroad tracks which extends through what is known as Lincoln Park. Such an honest dispute as to what comprises the neighborhood makes the issue fairly debatable, and the city's choice to accept the planning commission's definition, therefore, cannot successfully be questioned here. *Rockville v. Henley, supra.* Once the neighborhood is thus delineated, the changes in its character

since 1960 become evident and confirm the conclusion reached in *Henley* only one year ago:

> "The present portrait of this neighborhood sharply contrasts with that painted for this Court in *England v. Rockville, supra*. The 8 1/2% increase in population in recent years, the construction of 40 new residences, and the demolition of four or more buildings which could have been described as eyesores lays to rest the 1962 prediction of doom forecast in *England* for the residential character of this area. The community's revitalization, aided by a . . . federal grant for public improvements, has effectively turned the tide and, although at one time this area may have flirted with industrial development, it is now a viable residential community." *Id.* at 475.

Accordingly, we agree with the trial court that the question of change was fairly debatable and the city's conclusion on this point must be accepted.

On the question of original mistake, this Court has held that when the assumption upon which a particular use is predicated proves, with the passage of time, to be erroneous, this is sufficient to authorize a rezoning. *White v. Board of Appeals*, 219 Md. 136, 148 A. 2d 420 (1959). It is clear that in *England* we were influenced in our decision to direct a rezoning of this property, in part, because of the existence of a proposed plan drafted by the planning commission's staff calling for industrial development along the Stonestreet Avenue corridor which, as it turns out, was not adopted, and, in part, upon our assumption that "there [was] no other logical use [for this area] than that for industrial purposes." The revitalization documented above has proved that our forecast was ill founded, and, now that there exists an opportunity to correct our errant prediction, we shall not stand in the city's way. *Rockville v. Henley, supra*.

All that we have said thus far would be largely academic if the ordinance which prescribed this rezoning deprived the protestants of all reasonable use of their land as the trial

court found. That court, in reversing the city's action, ruled that the effect of this ordinance was to dispossess the owners of two-thirds of their original investment, and, as such, it "served to destroy the greater part of its value" and accordingly was unconstitutional. For its conclusion, the trial court relied on the reasoning of *Salamar Builders Corp. v. Edward S. Tuttle*, 29 N.Y.2d 221, 275 N.E.2d 585, 325 N.Y.S.2d 933 (1971) and determined that it was necessary to weigh the State's affirmative demonstration that the public health, safety and welfare will be served by the zoning ordinance against the resulting hardship sustained by the property owners. However, regardless of the validity that the weighing test may have in New York, this Court's rejection of such an approach is too well settled for us to depart from it now. As was stated for this Court by Judge Barnes in *Montgomery Co. Council v. Kacur*, 253 Md. 220, 229, 252 A. 2d 832 (1969):

> "The legal principles governing the taking of private property without payment of just compensation by zoning action have been set out many times before by this Court. As Judge Oppenheimer stated in *Mayor and City Council of Baltimore v. Borinsky*, 239 Md. 611, 622, 212 A. 2d 508, 514 (1965):

> 'The legal principles whose application determines whether or not the restrictions imposed by the zoning action on the property involved are an unconstitutional taking are well established. If the owner affirmatively demonstrates that the legislative or administrative determination deprives him of *all* beneficial use of the property, the action will be held unconstitutional. But the restrictions imposed must be such that the property cannot be used for *any* purpose. It is not enough for the property owners to show that the zoning action results in substantial loss or hardship.' " (emphasis added).

> *Accord, Stratakis v. Beauchamp*, 268 Md. 643, 654, 304 A. 2d 244 (1973); *Cabin John Ltd. v. Montgomery Co.*, 259 Md. 661, 670, 271 A. 2d 174 (1970); *Zoning Bd. of Howard Co. v. Kanode*, 258 Md. 586, 596, 267 A. 2d 138 (1970); *Skipjack Cove Marina, Inc. v. County Comm'rs for Cecil County*, 252 Md. 440, 250 A. 2d 260 (1969); *Franklin Construction Co. v. Welch*, 251 Md. 715, 248 A. 2d 639 (1968).

The record is devoid of evidence which would demonstrate that the owners were denied *all* reasonable use of the property under the new zoning classification. For example, there has been no attempt by the protestants to show that their property's soil or topographical conditions make the construction of any type of building which would comply with the use requirement of this zone not feasible. Instead, we hear only that infamous incantation of "financial hardship" so often disavowed by this Court. *Rockville v. Henley, supra.* It is not with a deaf or totally unsympathetic ear that we listen to the details of the financial disaster which may result because of this rezoning. Nevertheless, the record before us clearly demonstrates that these lots can be used for residential purposes as is permitted by their new classification, and, accordingly, we do not find that this property has been unconstitutionally confiscated.

> *Order of the Circuit Court for Montgomery County of July 17, 1973 reversed and Ordinance No. 12-72 of the Mayor and Council of Rockville, adopted March 14, 1972 is reinstated.*
>
> *Costs to be paid by the property owners.*