HOWARD COUNTY, MARYLAND ET AL. *v.* WILLIAM P. DORSEY

[No. 73, September Term, 1980.]

*Decided January 6, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Carol B. O'Keeffe, Assistant County Solicitor,* with whom was *Timothy E. Welsh, County Solicitor,* on the brief, for appellants.

*Rebecca A. Bryant* and *Bernard F. Goldberg* for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents the question whether the County Council of Howard County (Council) [1] committed basic and actual "mistake" or "error" as those interchangeable terms are used in zoning law, when it adopted a comprehensive zoning map amendment.

The subject property, owned by William P. Dorsey (owner), is located within an area of land bounded on the north by Snowden River Parkway, on the east by Oakland Mills Road, and on the southwest by the Baltimore and Ohio railroad tracks. The railroad tracks run through the northern portion of an area known as Guilford.

The subject property, consisting of 4.76 acres, is bounded on the north by Berger Road and on the east by Oakland Mills Road. It is presently zoned R-12 (Residential-Single 12,000 square foot minimum lot size). A single-family dwelling located at the northeast corner of the subject property and fronting on the south side of Berger Road is the only development existing on the subject property. On the west it is bounded by approximately six acres of land, zoned R-12, upon which approximately four or five dwellings are developed, one of which is used as commercial office space. Confronting the western portion of the subject property on the north and across Berger Road is a parcel of land, consisting of approximately three acres, that is zoned R-12 and is improved by a single-family dwelling. The approximately 15 acres of residentially zoned land of which the subject property is a part are surrounded by land zoned NT (New Town), most of which is developed or being developed for industrial use.

---

[1]. Sections 16.200 and 16.201 of the Howard County Code provide that the zoning authority of Howard County "shall be the Howard County Zoning Board" and "shall consist of the members of the County Council." Throughout the text of this opinion, the term "Council" refers interchangeably to either the County Council of Howard County or the Howard County Zoning Board.

The subject property was classified in the R-20 zone (Residential-Single 20,000 square foot minimum lot size) by the comprehensive zoning map which preceded that of 1977. On 3 October 1977, the Council adopted a comprehensive zoning map amendment that reclassified the subject property to the R-12 zone.

Within five months of the adoption of the comprehensive zoning map amendment, the owner petitioned the Council for a piecemeal reclassification of the subject property to the M-1 zone (Manufacturing-Light), alleging, in essence, that there was an error in the comprehensive zoning with respect to the subject property. After a hearing, the Council concluded that the comprehensive zoning was not in error in reclassifying the subject property to the R-12 zone. In its opinion, the Council said in pertinent part:

> "1. That the Board had considered the subject parcel in the course of its deliberations in formulating the comprehensive zoning map, a part of the Comprehensive Zoning Plan adopted October 3, 1977, held a specific public hearing thereon and at that time the parcel had been reclassified from an R-20 to an R-12 residential classification.
>
> "2. The Board further finds that there was no mistake in placing this parcel in the R-12 zoning classification at that time.
>
> "3. The Board agrees with the finding of the Department of Planning and Zoning of Howard County that the proposed zoning change is not in accordance or in harmony with the land use as shown on the Howard County General Plan adopted December 6, 1971, as amended on August 2, 1976. All as shown on protestants' exhibit #1, filed in the case."

Accordingly, the Council denied the requested reclassification to the M-1 zone.

On 2 October 1978, the owner appealed to the Circuit Court for Howard County. On 17 September 1979, a decision

and order was filed indicating that there was error in the comprehensive zoning, reversing the order of the Council, and ordering the reclassification of the subject property to the M-1 zone. The Council appealed to the Court of Special Appeals which affirmed the decision of the Circuit Court. *Howard County, Maryland v. Dorsey,* 45 Md. App. 692, 416 A.2d 23 (1980). The Council filed a petition for a writ of certiorari that we granted. We shall reverse the judgment of the Court of Special Appeals.

This Court has repeatedly recognized that there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that "strong evidence" of error is required to overcome that presumption. *Pattey v. Board of County Comm'rs for Worcester County,* 271 Md. 352, 359, 317 A.2d 142, 146 (1974); *Wakefield v. Kraft,* 202 Md. 136, 141-42, 96 A.2d 27, 29 (1953). In *Trainer v. Lipchin,* 269 Md. 667, 672-73, 309 A.2d 471, 474 (1973), this Court, quoting from *Stratakis v. Beauchamp,* 268 Md. 643, 652-53, 304 A.2d 244, 249 (1973), said:

> " '. . . Where a legislative body, or a board of county officials, pursuant to authority conferred upon it, has granted a rezoning of property, the question on judicial review is whether or not such action is arbitrary and discriminatory or fairly debatable. We shall follow that test in considering this appeal.
>
> " 'While, in recent years, we have had occasion to enunciate a number of important principles applicable to the law of zoning, perhaps none is more rudimentary than the strong presumption of the correctness of original zoning and of comprehensive rezoning. To sustain a piecemeal change in circumstances such as those present here, *strong* evidence of mistake in the original zoning or comprehensive rezoning or evidence of substantial change in the character of the neighborhood must be produced. Since, as we have also said, this burden is onerous, the task confronting appellants [appellees], whose application followed the compre-

hensive rezoning by merely four months, is manifestly a difficult one.'" (Emphasis in original.) (Citations omitted.)

See also *Pattey,* 271 Md. at 359-60, 317 A.2d at 146. Because under this test "strong evidence" of error is required to make the issue of mistake in comprehensive zoning fairly debatable, it is only if such strong evidence is presented by the applicant that property can be reclassified.

Here the Council found that the evidence adduced by the owner was insufficient to overcome the presumption of correctness which attached to the 1977 comprehensive zoning map amendment that reclassified the subject property to the R-12 zone. It concluded that the owner failed to establish that there was "mistake" or "error" in the comprehensive zoning map amendment of 1977 and, therefore, refused to reclassify the subject property to the M-1 zone. The trial court and the Court of Special Appeals disagreed. They determined that the evidence was sufficient and ordered the subject property to be reclassified to the M-1 zone.

In order to assess the evidence before the Council, it is necessary to understand the inherent nature of the terms "mistake" or "error" as they are used in zoning law. In considering that question, the Court of Special Appeals in *Boyce v. Sembly,* 25 Md. App. 43, 50-53, 334 A.2d 137, 142-43 (1975), said:

"A perusal of cases, particularly those in which a finding of error was upheld, indicates that the presumption of validity accorded to a comprehensive zoning is overcome and error or mistake is established when there is probative evidence to show that the assumptions or premises relied upon by the Council at the time of the comprehensive rezoning were invalid. Error can be established by showing that at the time of the comprehensive zoning the Council failed to take into account then existing facts, or projects or trends which were reasonably foreseeable of fruition in the future, so that the

Council's action was premised initially on a misapprehension. *Bonnie View Club v. Glass,* 242 Md. 46, 52-53, 217 A.2d 647, 651 (1966); *Jobar Corp. v. Rodgers Forge Community Ass'n.,* 236 Md. 106, 112, 116-18, 121-22, 202 A.2d 612, 615, 617-18, 620-21 (1964); *Overton v. County Commissioners,* 225 Md. 212, 216-17, 170 A.2d 172, 174-76 (1961); *see Rohde v. County Board of Appeals,* 234 Md. 259, 267-68, 199 A.2d 216, 218-19 (1964). Error or mistake may also be established by showing that events occurring subsequent to the comprehensive zoning have proven that the Council's initial premises were incorrect. As the Court of Appeals said in *Rockville v. Stone,* 271 Md. 655, 662, 319 A.2d 536, 541 (1974):

'On the question of original mistake, this Court has held that when the assumption upon which a particular use is predicated proves, with the passage of time, to be erroneous, this is sufficient to authorize a rezoning.'

*See Rohde, supra,* at 234 Md. 267-68, 199 A.2d 220-21; *England v. Rockville,* 230 Md. 43, 45-47, 185 A.2d 378, 379-80 (1962); *Pressman v. Baltimore,* 222 Md. 330, 338-39, 160 A.2d 379, 383 (1960); *White v. County Board of Appeals,* 219 Md. 136, 144, 148 A.2d 420, 423-24 (1959); *cf. Dill v. The Jobar Corp.,* 242 Md. 16, 20-21, 24, 217 A.2d 564, 567-68 (1966); *Marcus v. Montgomery County Council,* 235 Md. 535, 540-41, 201 A.2d 777, 780 (1964); *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 558, 105 A.2d 219, 221-22 (1954); *Wakefield v. Kraft,* 202 Md. 136, 144-45, 149, 96 A.2d 27, 30 (1953); *Hoffman v. City of Baltimore,* 197 Md. 294, 307, 79 A.2d 367, 373-74 (1951).

"It is presumed, as part of the presumption of validity accorded comprehensive zoning, that at the time of the adoption of the map the Council had before it and did, in fact, consider all of the relevant

facts and circumstances then existing. Thus, in order to establish error based upon a failure to take existing facts or events reasonably foreseeable of fruition into account, it is necessary not only to show [1] *the facts that existed at the time of the comprehensive zoning but also* [2] *which, if any, of those facts were not actually considered by the Council.* This evidentiary burden can be accomplished by showing that specific physical facts were not readily visible or discernible at the time of the comprehensive zoning, *Bonnie View Club, supra,* at 242 Md. 48-49, 52, 217 A.2d 649, 651 (mineshaft and subsurface rock formation); by adducing testimony on the part of those preparing the plan that then existing facts were not taken into account, *Overton, supra,* at 225 Md. 216-17, 170 A.2d 174-75 (topography); or by producing evidence that the Council failed to make any provision to accommodate a project, trend or need which it, itself, recognized as existing at the time of the comprehensive zoning, *Jobar Corp., supra,* at 236 Md. 116-17, 202 A.2d 617-18 (need for apartments). *See Rohde, supra,* at 234 Md. 267-68, 199 A.2d 221. Because facts occurring subsequent to a comprehensive zoning were not in existence at the time, and, therefore could not have been considered, there is no necessity to present evidence that such facts were not taken into account by the Council at the time of the comprehensive zoning. Thus, unless there is probative evidence to show that there were then existing facts which the Council, in fact, failed to take into account, or subsequently occurring events which the Council could not have taken into account, the presumption of validity accorded to comprehensive zoning is not overcome and the question of error is not 'fairly debatable.'

"Moreover, in reviewing the evidence before the Board, it must also be noted that the opinion or conclusion of an expert or lay witness is of no

greater probative value than that warranted by the soundness of his underlying reasons or facts. *Surkovich v. Doub,* 258 Md. 263, 272, 265 A.2d 447, 451 (1970); *Anderson v. Sawyer,* 23 Md. App. 612, 618, 329 A.2d 716, 720. The Court of Appeals and this Court have stated that an opinion, even that of an expert, is not evidence strong or substantial enough to show error in a comprehensive rezoning unless the reasons given by the witness as the basis for his opinion, or other supporting facts relied upon by him, are themselves substantial and strong enough to do so. *Stratakis, supra,* at 268 Md. 655, 304 A.2d 250; *Coppolino v. County Board of Appeals of Baltimore County,* 23 Md. App. 358, 371-72, 328 A.2d 55, 62 (1974)." (Emphasis added) (footnote omitted).

We believe these principles are applicable here.

The owner initially contends that the Council erred because it failed to take into account the fact that the subject property had not been designated, and indeed could not have been designated, as a part of the Guilford neighborhood on the 1971 General Plan for Howard County (1971 Plan) as amended. The owner asserts that unless the subject property "is an official part of the Guilford neighborhood, it may not be utilized for the benefit of that neighborhood at the Appellee's expense." The owner points out that the Council's primary reason for retaining the subject property in a residential classification was to facilitate the continued operation of the Guilford neighborhood school. The owner concludes that as a result of the Council's mistaken notion that the subject property was a part of the Guilford neighborhood, it erred in utilizing the subject property for the benefit of that adjacent neighborhood.

Here the record shows that the 1971 Plan did not designate the subject property as part of the Guilford

neighborhood. Nevertheless, the subject property was designated as a stable residential area.[2]

In 1974, the Office of Planning and Zoning conducted a study of the Guilford neighborhood.[3] Among the problems considered was the fact that surrounding industrial uses were beginning to encroach upon that rural residential community and the fact that the existing population of the neighborhood was so low that the existing neighborhood school might not be able to remain operational. It was recognized that the 15-acre residential area of which the subject property is a part and which lay in close proximity to the Guilford neighborhood, contained an existing and potential population necessary to the continued operation of the school. Accordingly, the study recommended that the 15-acre residential area of which the subject property is a part be included in the service area of the school. In addition, it was recognized that its retention as a stable residential area would be consonant with the goal of halting further encroachment of industrial uses in the community. Accordingly, the study recommended that the 15-acre residential area of which the subject property is a part be continued as a stable residential area.

---

2. The text of the 1971 Plan defines stable areas as follows:

"These are areas in which development already exists and is not expected to change in nature for the period of the Plan. . . ."

3. The text of the 1971 Plan describes a "neighborhood" as follows:

"The basic element used in identifying an existing neighborhood and in planning new ones is the service area of an elementary school. . . . *The control imposed by the size of the elementary school and the size of the population required to serve it is basic to the structuring of neighborhoods throughout the County.*

"Although the service area of an elementary school is the most convenient framework for determining the size and extent of a neighborhood, it cannot be indiscriminately applied. Each of the proposed neighborhoods shown in the General Plan has been delineated on the basis of the availability of existing and programmed public facilities such as water and sewer lines, roads, and existing residential, commercial and industrial development, and on the basis of a number of environmental factors such as topography, stream valleys, slopes, drainage, flood protection, and the preservation of important natural settings. The planned neighborhoods were organized on the basis of their relation to each other and to the development framework of the County." (Emphasis added.)

On 2 August 1976, the Council adopted an amendment to the 1971 Plan consisting, in essence, of a land use plan that designated the subject property as part of the "Guilford Community." The subject property remained designated, as it had been in the 1971 Plan, as a stable residential area.

Whether the subject property was or could have been designated as part of the Guilford neighborhood by the 1976 amendment to the 1971 Plan is immaterial. In order to establish "error" or "mistake" as those terms are used in zoning law, it is necessary to establish a mistake in the comprehensive rezoning and not in a master plan.

There is a distinction between a master plan and a comprehensive zoning or rezoning that results from a distinction between the planning function and zoning function. In *Board of County Commissioners of Carroll County v. Stephans,* 286 Md. 384, 389, 408 A.2d 1017, 1019 (1979), this Court said:

> "[S]ome confusion exists relative to the terms planning and zoning, which are not synonymous. Zoning is concerned with the use of property but planning is broader in its concept. 1 E. Yokley, *Zoning Law and Practice* § 1-2 (4th Ed. 1978) comments:
>
>> 'Expressing the matter in another way, let us say that zoning is almost exclusively concerned with use regulation, whereas planning is a broader term and indicates the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience and welfare as may be properly embraced within the police power.' "

The end product of the planning function is the production of a master plan that embodies recommendations for an area's development based on predictions of needs and

resources for an estimated future period. It proposes goals for orderly growth and development including the establishment of viable neighborhoods for which it delineates appropriate boundaries. In addition, it suggests methods for implementation and achievement of those goals, including proposals for future land use and zoning classifications. The end product of the comprehensive zoning function is a comprehensive zoning map that establishes, through zoning classifications, the way in which land may presently be utilized and developed. The zoning function is essentially limited to the establishment of land use districts through the imposition of zoning classifications. Thus, while recommendations with respect to the delineation of the neighborhood boundaries constitute appropriate considerations in the development of a master plan, the designation of neighborhood boundaries is not involved in a comprehensive zoning or rezoning.[4] *See Stephans,* 286 Md. at 388-90, 408 A.2d at 1019; *Pattey,* 271 Md. at 360-61, 317 A.2d at 147; *Board of County Comm'rs for Prince George's County v. Edmonds,* 240 Md. 680, 685, 215 A.2d 209, 213 (1965).

Here the record shows that the owner produced some evidence to demonstrate that the subject property was not designated as part of the Guilford neighborhood on the 1971 Plan as amended. Because this evidence at best established a mistake in the Plan and not in the comprehensive rezoning, it is irrelevant and, therefore, insufficient to establish "error" or "mistake" as those terms are used in zoning law.

In addition, the record unequivocally shows that the Council was engaged in the comprehensive rezoning function when, in 1977, it reclassified the subject property to the R-12 zone. The broad test of the validity of a comprehensive rezoning is whether it bears a substantial relationship to the

---

4. We note that in piecemeal rezonings, in which reclassification is sought on the basis of change in the character of the neighborhood, the applicant must prove and the zoning authority must determine the area that reasonably constitutes the "neighborhood" of the subject property. Mayor of Rockville v. Henley, 268 Md. 469, 473, 302 A.2d 45, 47, (1973); Montgomery v. Board of County Comm'rs for Prince George's County, 256 Md. 597, 602, 261 A.2d 447, 450 (1970).

public health, comfort, order, safety, convenience, morals and general welfare. *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 66, 254 A.2d 700, 704-05 (1969). Comprehensive zoning or rezoning must be well thought out, the product of careful consideration and extensive study, and based upon considerations concerning the common needs of a particular area. In addition, the comprehensive zoning or rezoning must be designed to accomplish so far as possible the most appropriate uses of land consistent with the public interest and the safeguarding of the interests of the individual property owners. *Mraz v. County Comm'rs of Cecil County,* 291 Md. 81, 88, 433 A.2d 771, 776 (1981); *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 702, 706-07, 376 A.2d 483, 492-93, 495 (1977), *cert. denied sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S.Ct. 1245 (1978). Because there is no requirement that a comprehensive zoning plan must conform to the recommendations of an applicable master plan, the needs of the particular area considered need not necessarily be a neighborhood delineated in an applicable master plan. *Woodard & Lothrop, Inc.,* 280 Md. at 704-05, 376 A.2d at 493; *Nottingham Village, Inc. v. Baltimore County,* 266 Md. 339, 353-54, 292 A.2d 680, 687-88 (1972). Moreover, zoning regulations which facilitate the adequate provision of schools and orderly development are in the public interest and constitute a proper exercise of the police power.[5]

Here the planning history of the Guilford area shows that when the Council enacted the 1977 comprehensive zoning, it considered the common needs of the area designated as the Guilford Community in the 1971 Plan as amended. Whether the area considered was designated as a neighborhood in the 1971 Plan as amended is immaterial. What is of significance

---

5. Section 4.03 provides in pertinent part:

"[Zoning] regulations shall be made in accordance with the plan and designed . . . to facilitate the adequate provision of transportation, water, sewerage, *schools,* recreation, parks and other public requirements. Such regulations shall be made . . . encouraging the *orderly development* and the most appropriate use of land throughout the jurisdiction." (Emphasis added.)

is that the 15-acre residential area of which the subject property is a part was designated as a stable residential area in the 1971 Plan as amended.

The Council's 1977 comprehensive zoning was given careful consideration and adopted only after extensive study and public participation. As a result of its study, the Council determined that in order to avoid adverse effects upon the surrounding properties and the general area through the closing of an existing school, and the encroachment of industrial uses, it was necessary to retain the subject property in a residential zone. The Council's designation of the subject property in the R-12 zone was in accordance with the comprehensive plan that not only took into account future public needs and purposes, but also was designed to provide an adequate potential for orderly growth in the future, and to control and direct the use of land and buildings so as to accomplish the most appropriate uses of land, consistent with the public interest and the safeguarding of the interests of the individual property owners. *Woodward & Lothrop, Inc.,* 280 Md. at 706, 376 A.2d at 494. Under the circumstances here, the Council did not err.

The owner next contends that at the time of the 1977 comprehensive zoning, the Council erred in placing the subject property in the R-12 zone because it failed to take into account the fact that the subject property was then unsuitable for residential development. Some of the evidence adduced to show that the subject property was not suitable for residential development is to be found in the recommendation of the Planning Board of Howard County. That Board was "of the opinion that the parcel in question probably should have been zoned in [an industrial] classification" because "the parcel in question is practically surrounded by industrial zoning classifications." This was the only reason offered to support this conclusion. In addition, the owner testified that the subject property was unsuitable for residential development because of its physical location. He offered no other reason for his conclusion. A witness qualified in the field of planning, after describing the subject property and its environs, testified that it was a

mistake to classify the subject property in the R-12 zone because "the property is surrounded by industrial." This was the only reason offered to support his conclusion.[6]

The evidence adduced was insufficient to make the question of "error" or "mistake" fairly debatable for two reasons. First, because the conclusion that the subject property was unsuitable for residential development was not supported by adequate reasons or facts, it was entitled to little if any probative value. It was not sufficiently strong and substantial to overcome the presumption of validity of the comprehensive zoning. Secondly, there was no evidence to show that at the time of the comprehensive zoning the Council was unaware of the readily visible physical characteristics and location of the subject property and failed, in fact, to take them into account. Thus, there was no evidence to show that the initial premises of the Council with respect to the subject property were incorrect and that consequently the classification assigned at the time of the comprehensive rezoning was improper.

When all is said and done, this record is totally devoid of any evidence to show that at the time of the comprehensive zoning of the subject property the Council failed to take into account any facts or circumstances then existing relevant to the subject property and its environs so that its initial assumptions and premises in determining the appropriate

---

**6.** The owner's contention that as a result of the Council's refusal to reclassify the subject property he was deprived of all reasonable use of the land is unsupported by the record. The planner testified that there was no reasonable use that could be made of the subject property in the R-12 zone because the approximately 15 acres of R-12 zoned land of which the subject property is a part "is fifteen acres in a sea of hundreds and hundreds of acres of industrially zoned land — so no its not viable." This was the only reason offered to support his conclusion.

The record shows, however, that there was a reasonable use for the subject property in the R-12 zone. Woodward & Lothrop, Inc., 280 Md. at 723-24, 376 A.2d at 503; Mayor of Rockville v. Stone, 271 Md. 655, 662-64, 319 A.2d 536, 541-42 (1974); Walker v. Board of County Comm'rs of Talbot County, 208 Md. 72, 94-95, 116 A.2d 393, 405 (1955). Both the planner and the owner acknowledged that the subject property presently contains a single-family residence, that it was adjoined on the west and confronted on the north by R-12 zoned land upon which single-family development had taken place and presently existed, and that, under R-12 zoning, three units per acre could be developed.

classification for the subject property were erroneous. Nor was there any probative evidence of any events occurring subsequent to the time of the comprehensive zoning, which would show that the Council's assumptions and premises at the time of the comprehensive zoning had been proved invalid by the passage of time. Under all of the circumstances in this case the presumption of validity accorded to the comprehensive rezoning was not overcome and the question of "error" or "mistake" in the comprehensive zoning of the subject property was not "fairly debatable." Accordingly, we shall reverse the judgment of the Court of Special Appeals.

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded to that Court with directions to reverse the judgment of the Circuit Court for Howard County and to remand the case to that Court for entry of an order affirming the order of the Howard County Zoning Board.*
>
> *Costs to be paid by respondent.*